David Gary CHAMPEAU, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–82–493.

Court of Criminal Appeals of Oklahoma.

Feb. 15, 1984.

Rehearing Denied April 17, 1984.

Jack L. Freeman, Edmond, for appellant.

Jan Eric Cartwright, Atty. Gen. of Oklahoma, Patrick W. Willison, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

CORNISH, Judge.

David Gary Champeau and two co-defendants were convicted of Unlawful Cultivation of Marijuana and Possession of Marijuana With Intent to Distribute. Champeau was sentenced to two consecutive ten-year prison terms, and fines of $25,000 and $5,000, respectively.

### I

On appeal, he contends that the evidence was insufficient to support the verdicts. The evidence at trial established the following: On the morning of October 2, 1980, lawmen acting on a tip followed one of the appellant's co-defendants from a residence in Norman, Oklahoma, to a tract of land in Pottawatomie County. A second co-defendant arrived shortly thereafter. The men were seen entering the land through what appeared to be a locked gate. Based upon information from a confidential informant, their own observations, and an aerial inspection of the property, the officers obtained a search warrant.

The officers were forced to break a key operated padlock on the gate in order to enter the fenced property and execute the warrant. In response to their command, appellant exited a house trailer on the land. The co-defendants were later seen driving past the property in a pickup truck, and were apprehended a few miles away.

The search of the house trailer revealed drying racks in the bedroom and cut marijuana. A semi-trailer eighty yards northwest of the house trailer contained additional drying racks and marijuana. Two fields of marijuana were discovered one hundred yards west of the house trailer. The fields were irrigated by means of water sprinklers elevated on poles six or seven feet above the ground, connected to water hoses controlled from a pump house near the house trailer. A total of four tons of marijuana was seized from the tract.

Bills and a piece of mail bearing appellant's name and a Norman address were found in the living room of the house trailer. The mail was propped against a wall behind two jars containing marijuana, one of which was labeled "stash." Several photographs were seized from the living room. One showed appellant seated on the couch in the living room, shirtless and smoking a cigarette. The others depicted appellant and/or his co-defendants posing in the midst of tall plants identified as marijuana.

Under the facts of this case,

> [w]here a person is present in premises where marijuana is found, but does not have exclusive access, use, or possession of the premises, it may not be inferred that he had knowledge of the presence of

marihuana and had control of it unless there are additional independent factors showing his knowledge and control.

*Brown v. State,* 481 P.2d 475 (Okl.Cr.1971), Syllabus 3. We find sufficient additional factors beyond appellant's mere presence on the premises to indicate his knowledge and at least joint control of the contraband. He was within a locked compound containing fields of growing marijuana and structures with processing facilities. At the time of the raid he was the sole occupant of the house trailer. Personal papers, including the three week old letter, were in the living room of the trailer. Photographic evidence depicted appellant and the co-defendants in a field of growing marijuana plants. Moreover, the sheer quantity of drug seized, coupled with a large quantity of small plastic bags found in the house trailer and scales in the semi-trailer, support a finding of intent to distribute.

■ The evidence was also sufficient to establish that appellant unlawfully cultivated marijuana on land under his control, 63 O.S.1981, § 2–509(1), or aided and abetted such activity, 21 O.S.1981, § 172. A cultivation operation was clearly underway on the tract, including irrigation, and appellant's connection with the operation was sufficiently shown. Especially significant in this regard are the photographs, one of which depicts appellant apparently measuring the length of a branch of one plant with his forearm.

## II

■ Appellant challenges the admission of the evidence against him. He argues that the photographs were not sufficiently connected with the property in question. He states that he was clean shaven in the photographs but heavily bearded at the time of arrest, indicating a substantial length of time between the photos and the events in question. It is sufficient to point out that the photographs actually show that appellant was at least partially bearded at the time they were taken. State's Exhibits Nos. 36, 37, 38 and 39.

■ Appellant also argues that the photographs were not proven to depict the land in question. The probative value of photographs depends upon their accuracy, and they must be shown by extrinsic evidence to be faithful representations of the place or subject as it existed at the time involved in the controversy. *Shockey v. State,* 524 P.2d 33 (Okl.Cr.1974). However, preliminary questions concerning the admissibility of evidence shall be determined by the trial court, subject to the provision that when the relevancy of evidence depends upon the fulfillment of a condition of fact, the judge shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition. 12 O.S.1981, § 2105(A) and (B).

■ We find sufficient evidence to support the admission of the photographs. In the background of one of the pictures is a device atop a pole several feet above the ground similar to the elevated irrigation devices found on the land in question. Compare State's Exhibit No. 36 with State's Exhibits Nos. 7, 8 and 13. Moreover, that the photographs depict the same three men amid growing marijuana as were arrested on or near the land in question, and that the photographs were found on the premises, are highly significant.

## III

Finally, appellant argues that all the evidence seized pursuant to the search warrant should have been suppressed due to the unconstitutionality of the search. We find it unnecessary to consider his arguments in this regard, since he has failed to show that his personal rights were violated in any manner.

■ With regard to appellant's Fourth Amendment contentions, whether the appellant had standing to bring a Fourth Amendment challenge must first be determined before inquiry can be made concerning violation of his Fourth Amendment rights. *Meeks v. State,* 637 P.2d 1259 (Okl. Cr.1981). Champeau had the burden of proving that he had a legitimate expecta-

tion of privacy in the area searched. The test applied by this Court derives from Justice Harlan's concurring opinion in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), and involves the two-fold requirement that the person have exhibited an actual, subjective expectation of privacy, and that the expectation be one that society is prepared to recognize as reasonable. *Edwards v. State*, 651 P.2d 1335 (Okl.Cr.1982). (quoting from *Finch v. State*, 644 P.2d 1378 (Okl.Cr.1982). More than a subjective expectation of not being discovered is required. Legitimation of expectations of privacy arise either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society. *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 430-431, 58 L.Ed.2d 387 (1978), Note 12. Wrongful presence is not sufficient.

Okla. Const. Art. II, § 30 has incorporated word for word the Fourth Amendment to the United States Constitution. *Tate v. State*, 544 P.2d 531 (Okl.Cr. 1975). The rights conferred by that provision are personal to the owner or occupant of the premises searched. One accused of a crime may not object that a search is unlawful where he does not contend that he has possession of the property or premises searched. *Sanders v. State*, 351 P.2d 1079 (Okl.Cr.1960). The character of the requisite occupancy or possession is clearly suggested in *Ellsworth v. State*, 295 P.2d 296 (Okl.Cr.1956), Syllabus No. 4:

Where the evidence, on a motion to suppress, supports the defendant's claim that he had *lawful possession* of the automobile, or a *proprietary interest* therein, a search predicated upon an unlawful arrest, based upon suspicion, is void ab initio.

(Emphasis added.) In *Martin v. State*, 375 P.2d 481 (Okl.Cr.1962), we held that where the defendant never at any time claimed ownership or legal custody or control of the place searched—an automobile—and where evidence of ownership or proprietary interest was objected to by the defendant and never shown, a search and seizure could not be considered a violation of the defendant's constitutional rights.

In the case at bar, the motion to suppress was decided on the testimony of the prosecution witnesses at the preliminary hearing. None of the defendants testified. There is no evidence as to the ownership of the land and structures in question, nor as to who was in lawful possession. There is no indication by what right or under what circumstances appellant and his co-defendants were present on the land.

An analogous situation obtained in *Goehring v. State*, 627 S.W.2d 159 (Tex.Cr. App.1982), where the defendant challenged on constitutional grounds the seizure of a large quantity of marijuana from a ranch on which he resided. The Court stated:

Only two pertinent facts appear in the record; appellant was seen working with a hoe in a field of growing marihuana plants, and lived in a house separate from that of Jarvis on the ranch premises. The record does not reveal appellant's interest in the residence where he was living at the time, i.e. whether he leased it, resided there as a guest, received lodging on account of his employment on the ranch, or was merely trespassing on the property. Nor, are we informed of the duration of his residence on the ranch; he may have been there for one or more days prior to the seizure of the marihuana. We also do not know the number of persons who may have resided on the ranch, had access to the ranch or whether appellant had any authority to exclude others from the premises.

\*　　\*　　\*　　\*　　\*　　\*

Although in this cause appellant filed and argued a motion to suppress evidence, we find that the following language from *Lewis* is otherwise applicable to our facts:

There was no motion to suppress the evidence complained of, and thus no attempt to offer evidence from appellant or any other competent source as to what relationship existed between appellant and the premises at the time

the officers entered. *There may have been such a relationship, but appellant failed to establish its existence as he was required to do. [Lewis v. State]* 598 S.W.2d [280] at 283 [Tex.Cr. App.1980] (Emphasis added).

Id., at 164–165. (Footnotes omitted).

In the case at bar, there is simply no evidence from which we may determine the legitimacy of appellant's subjective expectation of privacy, if any, nor the character of his possession or interest in the premises. Accordingly, appellant's challenge to the constitutionality of the search and seizure must fail.

## IV

The judgments and sentences are AFFIRMED.

BRETT, J., concurs.

BUSSEY, P.J., not participating.