2009 OK CR 9

**The STATE of oklahoma, Appellant**

v.

**Lindsay Lynn POPE, Appellee.**

No. S 2008–210.

Court of Criminal Appeals of Oklahoma.

March 4, 2009.

Dennis Smith, District Attorney, Angela Marsee, Assistant District Attorney, Custer County Courthouse, Arapaho, OK, Attorneys for State/Appellant.

Randolph S. Meacham, Ryan A. Meacham, Stephanie C. Jones, Randolph S. Meacham, PC, Clinton, OK, Attorneys for Defendant/Appellee.

## OPINION

LEWIS, Judge.

¶1 Lindsay Lynn Pope was charged with first degree murder in violation of 21 O.S. 2001, § 701.7(C), in the District Court of Custer County, Case No. CF–2007–362. Pope filed a motion to suppress her statements and evidence derived from her statements alleging, generally, that the statements were taken in violation of the right to counsel encompassed in the Fifth Amendment to the United States Constitution. The Honorable Charles L. Goodwin heard Pope's motion and agreed that the evidence must be suppressed.

¶2 The State now appeals the District Court's decision under 22 O.S.Supp. 2008, § 1053(5), asserting that the statements provide a substantial part of the proof of the pending charges and the suppression substantially impairs and/or restricts the State's ability to prosecute this case. Section 1053 provides, in part, that the State may appeal,

> Upon a pretrial order, decision, or judgment suppressing or excluding evidence where appellate review of the issue would be in the best interests of justice.

¶ 3 We find that the State's appeal is proper and review of this issue is in the best interests of justice.

¶ 4 We review a trial court's ruling on a suppression motion for an abuse of discretion. *Gomez v. State*, 2007 OK CR 33, ¶ 5, 168 P.3d 1139, 1141; *State v. Goins*, 2004 OK CR 5, ¶ 7, 84 P.3d 767, 769. In reviewing a trial court's decision suppressing evidence, we defer to the trial court's findings of fact unless they are clearly erroneous. *Gomez*, 2007 OK CR 33, ¶ 5, 168 P.3d at 1141–42. We review the trial court's legal conclusions derived from those facts *de novo*. *Id.* Our *de novo* review includes determining

> whether a confession is the product of the maker's free and unconstrained choice ... [by looking] to the totality of the circumstances surrounding it, including the defendant's character and the details of the interrogation. The State must prove a waiver is valid by a preponderance of the evidence.

*Ullery v. State*, 1999 OK CR 36, ¶ 16, 988 P.2d 332, 343 [omitted].

¶ 5 The facts related to this appeal are not in dispute as the entire interrogation process was recorded on audio/video equipment at the police station. At the beginning of the interview, Officer Evans informed Pope of her *Miranda* rights. Then, later in the interview, Evans confronted Pope with the medical examiner's report, telling her that the child died instantly of a skull fracture, and she was the only one who knew what had happened, as the child was in her sole custody at the time of death. After that, this colloquy followed:

Pope: I think I need to talk to a lawyer.

Evans: Lindsay

Pope: No, I'm not answering anymore questions until I talk to a lawyer.

Evans: Why do you feel that way?

Pope: I just think I need to talk to a lawyer.

[Long pause where the two just stare at each other]

Evans: Why do you feel that way?

Pope: Because I don't think I should be talking to you right now.

Evans: I don't guess I understand why an innocent person would want a lawyer at this point in the conversation.

Pope: Because, I've never been through anything like this and I don't know what has happened, but I didn't do anything to Luke.

Evans: Do you know who did?

Pope: No.

Evans: You realize that someone did it and it happened at your house. It happened at a time you were with him. It happened at a time when you, Lindsey, were with Luke.

Pope: No, I need to talk to a lawyer first.

¶ 6 Evans then explained to Pope that she was under detention, and that she was not free to leave the interview room. Evans took Pope's cell phone and told her that he could not get her a lawyer at that time. He said that he had to confer with the other investigators. Pope asked if a lawyer was going to come or if she could call her mom. Evans told her that "what happens is that I just won't ask anymore questions" and I'll be back in a minute. Evans refused to let Pope confer with her mother who was waiting at the police station. Evans then left Pope alone in the interview room.

¶ 7 Forty-six minutes later, after being left in the room alone, Pope knocked on the door and said that she wanted to talk to Evans. Another officer told her that Evans would be contacted. While waiting for Evans to arrive, Pope began writing a statement. Fifteen minutes later, Evans arrived in the room and Pope said, "I'm ready to talk to you now."

¶ 8 Evans allowed Pope to finish writing her statement and then told Pope to tell her side of the story. Only after Pope finished her story did Evans remind Pope that she had requested an attorney and asked her if she was "taking that back;" she said she was. He reminded her of her rights and asked if she remembered them. Pope said she remembered her rights and wanted to tell the truth.

¶ 9 In order to show that Pope voluntarily reinitiated conversation with the

police, the State must prove that Pope's waiver of rights,

"was (1) the product of a free and deliberate choice rather than intimidation, coercion, or deception, and (2) made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." . . . A defendant reinitiates interrogation when he represents a desire to open up a general discussion relating directly or indirectly to a criminal investigation. . . . In determining whether a confession is the product of the maker's free and unconstrained choice we look to the totality of the circumstances surrounding it, including the defendant's character and the details of the interrogation. The State must prove a waiver is valid by a preponderance of the evidence.

*Ullery,* 1999 OK CR 36, ¶¶ 15–16, 988 P.2d at 342–43, *quoting in part Le v. State,* 1997 OK CR 55, ¶ 7, 947 P.2d 535, 542; *see also Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986). After reviewing the entire record, including the briefs of the parties, the transcripts and the exhibits, we find that suppression of the statements in this case was proper. The State did not show, by a preponderance of the evidence, that Pope voluntarily reinitiated communications and waived *Miranda* rights after she had previously asserted her right to counsel.

If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked. If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent.

*Miranda v. Arizona,* 384 U.S. 436, 473–74, 86 S.Ct. 1602, 1627–28, 16 L.Ed.2d 694 (1966) [ omitted]; *see also Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981)(when suspect asserts right to counsel questioning must cease until attorney is provided or suspect voluntarily reinitiates communication with police).

¶ 10 The police continued questioning Pope after she had unequivocally asserted her right to answer questions only with the aid of legal counsel. The police then told her that they would not be contacting an attorney and held her in the interrogation room, with no ability to contact legal counsel, or anyone, for that matter, until she finally relented and said she would talk. Even then, the police did not remind her of her rights before asking her to explain what happened.

¶ 11 The State did not show by a preponderance of the evidence that Pope's statements were voluntary. We find, as the district court did, that the continued badgering [1] after Pope demanded an attorney, combined with Pope's incommunicado isolation, her physical and mental character,[2] and the State's failure to remind Pope of her *Miranda* rights before receiving her statement, written and oral, caused Pope's reinitiation to be involuntary and her statements to be made in violation of the Fifth Amendment to

1. The rule that police may not continue questioning until an attorney is procured is "designed to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights." *McNeil v. Wisconsin,* 501 U.S. 171, 177, 111 S.Ct. 2204, 2208, 115 L.Ed.2d 158 (1991), *quoting Michigan v. Harvey,* 494 U.S. 344, 350, 110 S.Ct. 1176, 1180, 108 L.Ed.2d 293 (1990). *See also Minnick v. Mississippi,* 498 U.S. 146, 150, 111 S.Ct. 486, 489, 112 L.Ed.2d 489 (1990),

*quoting Harvey,* 494 U.S. at 350, 110 S.Ct. at 1180, *and* see also *Oregon v. Bradshaw,* 462 U.S. 1039, 1044, 103 S.Ct. 2830, 2834, 77 L.Ed.2d 405 (1983).

2. The facts reveal that Pope was a young pregnant mother who had limited contacts with the police.

the United States Constitution as well as equivalent provisions found in the Oklahoma Constitution.[3]

## DECISION

¶ 12 The ruling of the trial court suppressing the evidence in this case is **AFFIRMED** and this case is **REMANDED** to the district court for further proceedings consistent with this opinion. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2009), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

C. JOHNSON, P.J., A. JOHNSON, V.P.J., and CHAPEL, J., concur.

LUMPKIN, J. concurs in Results.

3. This Court has, thus far, been consistent in its interpretation that the provisions of the Oklahoma Constitution give no greater protection than that afforded by the Fifth Amendment to the United States Constitution, in this regard. *State v. Thomason,* 1975 OK CR 148, ¶ 14, 538 P.2d 1080, 1086 ("However, we now hold that the particular phraseology contained within our constitutional provision upon self-incrimination is simply declaratory of the common law and does not grant broader protection than that embodied within the Fifth Amendment to the federal constitution.").