2010 OK CR 22

**STATE of Oklahoma, Appellant**

v.

**Johnny Q. SITTINGDOWN, Appellee.**

No. S–2009–755.

Court of Criminal Appeals of Oklahoma.

Sept. 30, 2010.

Danny Lohmann, Westline Ritter, Assistant District Attorneys, Alva, OK, Counsel for the State/appellant at trial and appeal.

Stephen Jones, April M. Davis, Jones, Otjen & Davis, Enid, OK, Counsel for defendant/appellee at trial and appeal.

*OPINION*

LUMPKIN, Judge.

¶ 1 Appellee, Johnny Q. Sittingdown, was charged by Information February 21, 2007, as amended July 28, 2008, in the District Court of Woods County, Case No. CF-2007-17, with two counts of Unlawful Possession of Controlled Dangerous Substance With Intent to Distribute Within 2000 Feet of a School (Methamphetamine), After Former Conviction of a Felony (63 O.S.Supp.2005, § 2-401). Following the preliminary hearing the magistrate, the Honorable Mickey Hadwiger, dismissed the Information after suppressing the State's evidence.

¶ 2 The State appealed the adverse ruling of the magistrate pursuant to 22 O.S.2001, § 1089.1. Following a hearing before the Honorable Ray Dean Linder, District Judge, the ruling of the magistrate was affirmed. The State appeals to this Court pursuant to 22 O.S.2001, § 1089.7.

¶ 3 This appeal was automatically assigned to the Accelerated Docket of this Court. Rule 11.2(A)(4), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2010). Oral argument was held April 8, 2010, pursuant to Rule 11.2(E). At the conclusion of oral argument, the matter was taken under advisement.[1]

¶ 4 The record reflects that the Woods County Sheriff's Office was delivered a Writ of Execution to serve on Appellee. Deputy Swenn served the writ on Appellee at 4:00 p.m., on February 16, 2007. Two other deputies accompanied him to serve the court order. The "Writ of General Execution" stated in part:

NOW, THEREFORE, You are commanded that of the goods and chattels of the said John Sittingdown, an individual, you cause the money above specified to be made; and for want of goods and chattels you cause the same to be made by *EXECUTING ON THE CASH REGISTER AT THE DEBTOR'S PLACE OF BUSINESS AS WELL AS ANY CASH ON THE PERSON OF MR. JOHN SITTINGDOWN.* And make return of this Execution, with your certificate thereon, showing the manner you have executed the same, within sixty days from the date hereof.

¶ 5 When the deputies arrived at the establishment, Appellee was leaving the bar. Deputy Swenn informed Appellee he had a paper to serve him and suggested they step back inside. Swenn asked Appellee "to take all of his money, everything out of his pockets." (Tr. 11). When Appellee started emptying his left front pocket, a small clear baggie containing a white crystal substance

---

1. Vice Presiding Judge Arlene Johnson and Judges Lumpkin and Lewis were present for oral argument. Presiding Judge Charles Johnson and Vice Chief Justice Steven W. Taylor, of the Oklahoma Supreme Court, listened to the audio tape of the oral argument as the three judges present for oral argument could not unanimously agree upon the outcome. Due to the retirement of the Honorable Charles Chapel from the Court effective February 28, 2010, Justice Taylor was appointed to participate in this decision.

(methamphetamine) was mixed in with the money. Appellee was taken into custody.

¶ 6 An Alva Police Department K–9 was walked around Appellee's vehicle and alerted to the odor of narcotics from the vehicle. Appellee gave consent to the search of his vehicle, which was parked in front of the bar. Paraphernalia containing a white residue, a money bag marked "Ira's" which contained money and half of an envelope with seven names on it, and the other half of the envelope with five bags of methamphetamine were found in the vehicle. Pursuant to a subsequent search warrant for Ira's Bar, issued by the District Court, ten red small jeweler's bags and two clear, cut-corner bags containing methamphetamine and a recipe to manufacture methamphetamine were found. Ira's Bar is located approximately seventy-five feet from a vo-tech school.

¶ 7 The magistrate suppressed all of the evidence finding a writ of execution would not authorize or allow deputies to ask Appellee to empty his pockets. While the reviewing judge determined the officers proceeded in good faith as they executed the civil writ and proceeded in good faith after that, he found Deputy Swenn exceeded his authority when he asked Appellee to take everything out of his pocket as there was not probable cause at that time.

¶ 8 The State argues the District Court erred in invoking the exclusionary rule and suppressing the evidence resulting from the service of the writ of execution, from the probable cause established by the "hit" of the drug dog and from the service of the search warrant. Appellee answers that the District Court properly invoked the exclusionary rule and suppressed the evidence in this case because the writ was void on its face, the deputies exceeded their authority and that the remaining evidence obtained from the search of Appellee's vehicle and the business were "fruit of the poisonous tree."

¶ 9 A law enforcement officer's execution of a writ or a civil order upon an individual's real or personal property constitutes a "seizure" within the meaning of the Fourth Amendment. *Soldal v. Cook County, Ill.,* 506 U.S. 56, 61, 113 S.Ct. 538, 543, 121 L.Ed.2d 450 (1992). The United States Supreme Court has recognized that the Fourth Amendment applies in the civil context as well as the criminal context. *Id.,* 506 U.S. at 67, 113 S.Ct. at 546. The Fourth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment, provides in part that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." *See Mapp v. Ohio,* 367 U.S. 643, 646 n. 4, 81 S.Ct. 1684, 1687 n. 4, 6 L.Ed.2d 1081 (1961). Generally, warrantless seizures are presumed unreasonable. *Harjo v. State,* 1994 OK CR 47, ¶ 21, 882 P.2d 1067, 1073. However, no warrant is required when the seizure occurs pursuant to a civil order or writ. *Soldal,* 506 U.S. at 67 n. 11, 113 S.Ct. at 546 n. 11; (*citing G.M. Leasing Corp. v. U.S.,* 429 U.S. 338, 351–52, 97 S.Ct. 619, 628, 50 L.Ed.2d 530 (1977)). In contrast, a municipal inspector must obtain a search warrant before conducting an administrative search of an individual's home. *See, e.g., Camara v. Municipal Court,* 387 U.S. 523, 534, 87 S.Ct. 1727, 1733, 18 L.Ed.2d 930 (1967) ("administrative searches of the kind at issue here are significant intrusions upon the interests protected by the Fourth Amendment, that such searches when authorized and conducted without a warrant procedure lack the traditional safeguards which the Fourth Amendment guarantees to the individual . . . ."). Likewise, the Internal Revenue Service may not intrude into the privacy of an individual's home or office to execute a tax levy without first obtaining a search warrant. *G.M. Leasing Corp.,* 429 U.S. at 354–55, 97 S.Ct. at 629–30.

¶ 10 Civil orders and writs are, by their very nature, distinct from administrative searches, tax levies or a warrantless seizure. A writ of execution is "[p]rocess issuing from a court in a civil action authorizing the sheriff or other competent officer to carry out the court's decision in favor of the prevailing party." BLACK'S LAW DICTIONARY 568 (6th ed.1990). Its purpose is the collection of a judgment in a civil matter.

An execution is the fruit and end of the suit, and is very aptly called the life of the law. The suit does not terminate with the

judgment; and all proceedings on the execution, are proceedings in the suit. . . .

*Bank of U.S. v. Halstead,* 23 U.S. (10 Wheat.) 51, 64, 6 L.Ed. 264 (1825). The writ existed at common law and predates the Magna Carta. *Murray's Lessee v. Hoboken Land & Improvement Co.,* 59 U.S. (18 How.) 272, 277, 15 L.Ed. 372 (1855).

¶ 11 Oklahoma has codified the issuance of the writ of execution. Oklahoma civil procedure permits a civil court litigant to execute upon a judgment debtor's lands, tenements, goods and chattels, which are not otherwise exempt by law, to satisfy an outstanding judgment. 12 O.S.2001, § 731 et seq. The writ of execution may only be issued by a court of record in this state. 12 O.S.2001, § 736. It is civil process of the court directed to a county sheriff. 12 O.S.2001, § 731.

¶ 12 As opposed to criminal or administrative searches, the subject of a civil order or writ has prior notice and opportunity to be heard. A writ of execution may only be issued following the entry of judgment. 12 O.S.2001, § 706(D). The parties are provided notice upon the initiation of the lawsuit. 12 O.S.2001, § 2004.2. The non-prevailing party is given notice of the entry of the judgment. 12 O.S.Supp.2007, § 696.2. Generally, no writ of execution may issue for ten (10) days following entry of the judgment. 12 O.S.2001, § 990.3(A). The subject of the order or writ may initiate challenges or take measures to avoid the writ of execution. See 12 O.S.2001, § 1031 (motion to vacate or modify judgment or order); 12 O.S.Supp. 2004, § 706.2 (cash deposit ceases judgment lien); 12 O.S.2001, § 1036 (motion for order suspending collection proceedings); 12 O.S.Supp.2002, § 990A (appeal); 12 O.S.Supp.2009, § 990.4 (stay of enforcement of judgment).

¶ 13 Because a civil order or writ is court process, the resulting seizure's constitutionality is subject to the "ultimate standard" of "reasonableness." *Soldal,* 506 U.S. at 71, 113 S.Ct. at 549; *quoting Camara,* 387 U.S. at 539, 87 S.Ct. at 1736. In *Soldal* the Supreme Court noted that where officers were acting pursuant to a court order, a showing of unreasonableness in the execution of the civil process would be a "laborious task indeed." *Soldal,* 506 U.S. at 71, 113 S.Ct. at 549.

¶ 14 The seizure in the present case was reasonable. The seizure was conducted solely pursuant to the civil writ of execution. The writ has not been shown to be unreasonable on its face. No challenge was made to the writ in the District Court. Furthermore, the officer's actions did not go outside the authority of the writ. The writ was executed as it was presented to the officer.

██ ¶ 15 The writ of execution authorized the officer to assume control and dominion over the contents of Appellee's pockets. A writ of execution is a command to the officer, to whom it is directed, to collect the money specified in the writ from the goods and chattels of the debtor. 12 O.S.2001, § 736. The officer to whom the writ is directed has a duty at law to execute the writ, levy against the goods and chattels of the judgment debtor, and to pay over all moneys collected or received to the judgment creditor. 12 O.S. 2001, § 811. The power of levy authorizes the officer to take possession of the judgment debtor's property. The Oklahoma Supreme Court, relying upon the various authorities available at the time, described it as follows:

> Our statutes specify the contents of an execution that shall be issued by a justice of the peace, section 994, Okla. St.1931, 39 Okla. St. Ann. § 283; but other than specifying that it shall be collected out of the personal property of the debtor, there are no directions with respect to the manner or method of making the levy upon the property found and subjected to the levy. However, as is said in 36 C.J. 1032, see. 2B "A levy, as applied to writs, is a word with a well-defined meaning," and "In its original sense, an actual making the money out of the property; the obtaining of money by seizure and sale of property. In its secondary sense, seizing the property preliminary to making the money out of it. * * * " The annotations on the quoted text and the text following the quotations make it obvious that a levy is made when property is seized by virtue of the authority of a writ of execution. 23 C.J. 430; *Words & Phrases,* Levy, Writs; 21 Am.Jur. 58,

§§ 107 et seq., and the cases cited thereunder. In 21 Am.Jur. 58, § 107, it is said:

In regard to a levy of execution upon personal property, the law generally does not prescribe any special or detailed methods of procedure. Assuming the authority of an officer to make a levy of execution upon personal property to be complete, the question of what constitutes a valid levy thereon seems to depend upon the combined results of the circumstances of each particular case, rather than upon the existence or nonexistence of any one circumstance which properly may, or usually does, accompany, evidence, or form a part of, the act of making a levy. In general, it may be said that to constitute a valid levy of execution upon personal property, the officer must interfere with the possession of the property in such a manner that he would be amenable to an action for trespass were it not for the protection afforded him by the writ.

*Farris v. Castor,* 1940 OK 7, ¶ 9, 186 Okla. 668, 99 P.2d 900, 902 (quotations and citation omitted). In making a valid levy, it is essential that the officer executing the order assumes control and dominion over the property. *See Fiegel v. First Nat'l Bank,* 1923 OK 112, ¶ 16, 90 Okla. 26, 214 P. 181, 184.

¶ 16 When Appellee emptied his pockets pursuant to the officer's execution of the writ, the officer perceived in plain view a small baggie of what appeared to be a controlled dangerous substance. Seizure of this baggie in the course of execution of the civil writ did not violate the Fourth Amendment. *See Coolidge v. New Hampshire,* 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971) (the plain view doctrine has been applied where a police officer is not searching for evidence against the accused, but nonetheless comes across an incriminating object); *Harris v. United States,* 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968).

■■■ ¶ 17 In addition to the fact that the actions of the officers were reasonable, they were also acting in "good faith" and their actions fall directly under the criteria outlined by the United States Supreme Court in

*United States v. Leon,* 468 U.S. 897, 920–21, 104 S.Ct. 3405, 3419, 82 L.Ed.2d 677 (1984). Since this Court has previously held in *De-Graff v. State,* 1909 OK CR 82, 2 Okla.Crim. 519, 103 P. 538, 541; *State v. Thomason,* 1975 OK CR 148, ¶ 14, 538 P.2d 1080, 1086; and *Long v. State,* 1985 OK CR 119, ¶ 6, 706 P.2d 915, 916–17, that the Federal Constitution and the Oklahoma Constitution are the same in the rights protected, we find *Leon* is applicable here. The exclusionary rule is not applied when a law enforcement officer has conducted a search in "objectively reasonable reliance" upon a search warrant issued by a magistrate and has abided by the terms of the warrant even if the warrant is subsequently determined to be invalid. *See Leon,* 468 U.S. at 922, 104 S.Ct. at 3420. The same rationale applies to a civil writ or order. The fruits of a search and seizure pursuant to a civil writ will not be suppressed even if the writ is subsequently found invalid if the officer acted in "objectively reasonable reliance" upon the civil writ and abided by its terms.

■■■ ¶ 18 As set forth in *Illinois v. Krull,* 480 U.S. 340, 347, 107 S.Ct. 1160, 1165–66, 94 L.Ed.2d 364 (1987) (citation omitted), "the 'prime purpose' of the exclusionary rule 'is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures.'" "Indiscriminate application of the exclusionary rule, therefore, may well 'generat[e] disrespect for the law and administration of justice.'" *Leon,* 468 U.S. at 908, 104 S.Ct. at 3412 (*quoting Stone v. Powell,* 428 U.S. 465, 491, 96 S.Ct. 3037, 3051, 49 L.Ed.2d 1067 (1976)). The reviewing judge found the officers in this case proceeded in good faith. We agree. We find no evidence of police misconduct or unlawful conduct. The officer's seizure and search were conducted in objectively reasonable reliance of the writ of execution. The officers acted as reasonable officers would and should act in similar circumstances.

¶ 19 Therefore, finding the District Court erred in invoking the exclusionary rule and suppressing the evidence in this case, the State's appeal is granted and the matter is reversed and remanded to the District Court for further proceedings consistent with this

Opinion. The remaining propositions of error are rendered moot.

### DECISION

¶20 The order of the District Court of Woods County suppressing the State's evidence and dismissing the Information is **REVERSED.** The matter is **REMANDED** for further proceedings consistent with this Opinion. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2010), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

A. JOHNSON, V.P.J. and S. TAYLOR, A.J.: concur.

C. JOHNSON, P.J.: concur in result.

LEWIS, J.: dissent.

LEWIS, Judge, dissents.

¶1 I would find that the officers exceeded their authority as granted to them pursuant to the Writ of Execution. I would affirm the prior Judges' rulings.