2014 OK CR 1

**STATE of Oklahoma, Appellant,**

v.

**Angela Marie MARCUM, Appellee.**

No. S–2012–976.

Court of Criminal Appeals of Oklahoma.

Jan. 28, 2014.

Julia D. Allen, Shannon McMurray, Tulsa, Oklahoma, for Defendant/Angela Marcum.

Julia D. Allen, Tulsa, OK, for Appellee/Angela Marcum.

E. Scott Pruitt, Attorney General of Oklahoma, Charles S. Rogers, Sr. Assistant Attorney General, Megan B. Tilly, Assistant Attorney General, Oklahoma City, Oklahoma, for Appellant/State.

Charles S. Rogers, Sr. Assistant Attorney General, Megan B. Tilly, Assistant Attorney General, Oklahoma City, Oklahoma, for State.

## OPINION

SMITH, Vice Presiding Judge.

¶ 1 Angela Marie Marcum, James Michael Miller, and William Harbert Layden Jr. were charged in the District Court of Pittsburg County, Case No. CF–2011–347, with Conspiracy to Defraud the State of Oklahoma in violation of 21 O.S.2001, § 424. All three defendants moved to suppress evidence relating to text messages. After a June 21, 2012 hearing, the Honorable Joe Sam Vassar issued an Order on November 12, 2012, granting the motions of Miller and Marcum and overruling Layden's motion. The State timely appealed that order as to Marcum and Miller under 22 O.S.2011, § 1053(5) in this Court, Case No. S–2012–1005.

¶ 2 Miller was also charged in the District Court of Oklahoma County, Case No. CF–2011–5312, with Perjury (Counts I, II and III) in violation of 21 O.S.2001, § 491. Miller moved to suppress evidence relating to text messages in that case. After an October 26, 2012 hearing, the Honorable Kenneth A. Watson granted Miller's motion to suppress. The State timely appealed that Order under 22 O.S.2011, § 1053(5), in this Court, Case No. S–2012–976. On December 27, 2012, this Court granted the State's motion to consolidate the cases as Case No. S–2012–976. On March 13, 2013, the State moved to dismiss the appeal against Miller. This motion was granted on March 28, 2013. Marcum remains as the only Appellee in the consolidated appeal. The State raises three propositions of error in support of its petition.

¶ 3 Miller was an assistant district attorney in Pittsburg County and Marcum was the drug court coordinator responsible for collecting money. Miller and Marcum were romantically involved. The Pittsburg County District Attorney told Miller that the OSBI was in town investigating suspected embezzlement. Shortly after that conversation, Miller was seen in the alley behind the courthouse, texting quickly. Miller sent Marcum text messages from his personal cell phone, and received text messages from her on his personal phone. In the Pittsburg County Order granting the motion to suppress in part, the trial court describes the messages as "salacious and incriminating." The defendants were accused in a multicounty grand jury indictment of obstructing the investigation of that crime.

¶ 4 The State sought to admit Exhibit 4, records of the U.S. Cellular telephone company of texts to and from Miller's cell phone, which were obtained pursuant to a search warrant. The State neither searched nor obtained records from Miller's actual cellular telephone. The defendants moved before trial to suppress these records. Miller took the lead in making and arguing this motion. He argued that his Fourth Amendment right against search and seizure was violated by seizure of the U.S. Cellular business records concerning Miller's texts. He claimed that the search warrant was invalid because the affidavit supporting it was insufficient. Marcum joined this motion. Judge Vassar found that both Marcum and Miller had a reasonable expectation that their texts would be private, and had standing to urge a motion to

suppress. In considering the merits of the motion, the trial court specifically found that Oklahoma had not adopted the good-faith exception, and did not apply it when considering alleged defects in the affidavit supporting the search warrant.

¶ 5 We find regarding Proposition I that a review of the record shows the appeal is proper and review of the issue is in the best interests of justice. 22 O.S.2011, § 1053(5); *State v. Pope*, 2009 OK CR 9, ¶ 3, 204 P.3d 1285, 1287.

¶ 6 We find in Proposition II that the trial court erred in suppressing the evidence as to Marcum. The defendants in the Pittsburg County case sought to suppress the evidence of text messages by attacking the search warrant. The search warrant was directed, not to any defendant's cell phone, but to the business records of the U.S. Cellular phone company, a corporation, which kept a record of the texts in the regular course of business.[1] The U.S. Cellular records contained text messages sent from and received by Miller's personal cell phone. The State argued the defendants had no standing to contest the search warrant. The defendants argued that they had a protected privacy interest in the U.S. Cellular records of the text messages under the Fourth Amendment. Despite the complex procedural history of this case, the threshold issue before this Court is quite narrow: does Marcum have a Fourth Amendment reasonable expectation of privacy in the U.S. Cellular records of the texts from Miller's phone account, including messages Miller sent to her and replies she sent to Miller's phone, which were received by Miller? That is, the issue is not whether Marcum has an expectation of privacy regarding the contents of text messages from her own phone, or even regarding phone company business records kept for her phone account. Given the facts of this case, Miller is the only person who could claim an expectation of privacy regarding message content and records from his personal phone account. We decide only the narrow issue before us.

¶ 7 The initial issue below and on appeal is whether Marcum has a reasonable expectation of privacy in the U.S. Cellular records of Miller's phone account. This is not an analysis of standing. Fourth Amendment rights are personal, may not be asserted on behalf of another, and will be enforced only where a search and seizure infringes on a defendant's own rights. *Rakas v. Illinois*, 439 U.S. 128, 133–34, 99 S.Ct. 421, 425–26, 58 L.Ed.2d 387 (1978). Whether a defendant's Fourth Amendment rights have been violated is analyzed under substantive Fourth Amendment law, not as a question of standing. *Minnesota v. Carter*, 525 U.S. 83, 87–88, 119 S.Ct. 469, 472, 142 L.Ed.2d 373 (1998); *Rakas*, 439 U.S. at 139–40, 99 S.Ct. at 428. Marcum must prove she exhibited an actual, subjective expectation of privacy, which society is prepared to recognize as reasonable. *Champeau v. State*, 1984 OK CR 54, ¶ 11, 678 P.2d 1192, 1195–96; *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring). A legitimate expectation of privacy may arise "by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *United States v. Jones*, —— U.S. ——, 132 S.Ct. 945, 951, 181 L.Ed.2d 911 (2012), quoting *Carter*, 525 U.S. at 88, 119 S.Ct. at 472; *State v. Bass*, 2013 OK CR 7, ¶ 5, 300 P.3d 1193, 1195 (quotation and citation omitted). In finding that Marcum had a privacy interest in the records, Judge Vassar found that Marcum made this showing. We review this decision for an abuse of discretion. *Bass*, 2013 OK CR 7, ¶ 10, 300 P.3d at 1196. An abuse of discretion is any unreasonable or arbitrary action taken without proper consideration of the facts and law pertaining to the issue; a clearly erroneous conclusion and judgment, clearly against the logic and effect of the facts. *Neloms v. State*, 2012 OK CR 7, ¶ 35, 274 P.3d 161, 170.

¶ 8 This Court has not previously determined whether there is a Fourth Amendment right to privacy under these cir-

---

1. All parties agree that the seizure of text messages here, from a business provider, is governed by the Stored Wire and Electronic Communications and Transactional Records Access Act, and that the seizure from U.S. Cellular was proper under the provisions of that Act. 18 U.S.C.A. §§ 2701–2712 (2002).

cumstances. Generally, "the issuance of a subpoena to a third party to obtain the records of that party does not violate the rights of a defendant, even if a criminal prosecution is contemplated at the time of [*sic*] the subpoena is issued." *United States v. Miller,* 425 U.S. 435, 444, 96 S.Ct. 1619, 1624, 48 L.Ed.2d 71 (1976). It is settled that there is no reasonable expectation of privacy in call records of phone numbers kept by a telephone company. *Smith v. Maryland,* 442 U.S. 735, 745–46, 99 S.Ct. 2577, 2583, 61 L.Ed.2d 220 (1979). Here, the records consist of more than account numbers, and include the contents of the text messages themselves. Also, of course, here Marcum is not the account holder on the U.S. Cellular account named in the warrant. As the following discussion shows, no published case from any other court has addressed precisely this issue; one unpublished Eleventh Circuit case has a very similar issue. Generally, the cases discussing cell phones are more inclined to find a right to privacy in one's personal cell phone with the advent of smartphones, which contain a large amount of data and resemble computers more than regular telephones.

¶ 9 The United States Supreme Court has so far refused to explicitly recognize a right to privacy in the content of cell phones. The United States Supreme Court has reviewed the issue of a reasonable expectation of privacy in text messages in a different context, in *City of Ontario, Ca. v. Quon,* 560 U.S. 746, 130 S.Ct. 2619, 177 L.Ed.2d 216 (2010). There, the City issued employees pagers which sent and received texts. After several months, the City audited the account, asked the wireless provider for transcripts of employees' text messages, discovered some were not work-related, referred the matter to the internal affairs division, and Quon was disciplined. He, and the persons with whom he had exchanged the messages, claimed that they had a reasonable expectation of privacy in the messages, and that the audit was not reasonable. *Quon* concerned a government employer auditing equipment provided by the employer for work use, and the decision is based on those grounds. The City had warned employees that it treated the pager text messages as if they were emails on City accounts, and that the messages were eligible for auditing, but a supervisor had told Quon that if he paid for the account overage there would be no need for an audit. The Supreme Court noted that the parties disagreed as to whether Quon, as an employee, had a reasonable expectation of privacy, but chose not to answer that question: "The Court must proceed with care when considering the whole concept of privacy expectations in communications made on electronic equipment owned by a government employer. The judiciary risks error by elaborating too fully on the Fourth Amendment implications of emerging technology before its role in society has become clear." *Quon,* 560 U.S. at 759, 130 S.Ct. at 2629. The Court further explained:

> [T]he Court would have difficulty predicting how employees' privacy expectations will be shaped by those changes or the degree to which society will be prepared to recognize those expectations as reasonable. Cell phone and text message communications are so pervasive that some persons may consider them to be essential means or necessary instruments for self-expression, even self-identification. That might strengthen the case for an expectation of privacy. On the other hand, the ubiquity of those devices has made them generally affordable, so one could counter that employees who need cell phones or similar devices for personal matters can purchase and pay for their own. And employer policies concerning communications will of course shape the reasonable expectations of their employees, especially to the extent that such policies are clearly communicated.

*Quon,* 560 U.S. at 759–60, 130 S.Ct. at 2630 (citation omitted). The Court was discussing text messages in the employment context, rather than, as occurred here, text messages connected with a private personal account.

¶ 10 In *United States v. Jones,* —— U.S. ——, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012), the United States Supreme Court held that the Fourth Amendment was violated when the government installed a GPS tracking device on a target vehicle and used it to monitor the vehicle's movements. The majority opinion was decided on the fact of the gov-

ernment's physical intrusion and occupation of private property in order to get information, rather than any reasonable expectation of privacy in the information. *Jones,* 132 S.Ct. at 949–50. However, concurring Justices pondered the relationship between electronic tracking of movement, other forms of electronic communication, and expectations of privacy. Justice Sotomayor stated,

> More fundamentally, it may be necessary to reconsider the premise that an individual has no reasonable expectation of privacy in information voluntarily disclosed to third parties. This approach is ill suited to the digital age, in which people reveal a great deal of information about themselves to third parties in the course of carrying out mundane tasks. People disclose the phone numbers that they dial or text to their cellular providers; the URLs that they visit and the e-mail addresses with which they correspond to their Internet service providers; and the books, groceries, and medications they purchase to online retailers. Perhaps, as Justice Alito notes, some people may find the "tradeoff" of privacy for convenience "worthwhile," or come to accept this "diminution of privacy" as "inevitable," post, at 962, and perhaps not. I for one doubt that people would accept without complaint the warrantless disclosure to the Government of a list of every Web site they had visited in the last week, or month, or year. But whatever the societal expectations, they can attain constitutionally protected status only if our Fourth Amendment jurisprudence ceases to treat secrecy as a prerequisite for privacy. I would not assume that all information voluntarily disclosed to some member of the public for a limited purpose is, for that reason alone, disentitled to Fourth Amendment protection.

*Jones,* 132 S.Ct. at 957 (Sotomayor, J., concurring) (citations omitted). Concurring in the judgment, Justice Alito would have analyzed the issue exclusively under the Fourth Amendment reasonable expectation of privacy. He noted:

> [T]he *Katz* test rests on the assumption that this hypothetical reasonable person has a well-developed and stable set of privacy expectations. But technology can change those expectations. Dramatic technological change may lead to periods in which popular expectations are in flux and may ultimately produce significant changes in popular attitudes. New technology may provide increased convenience or security at the expense of privacy, and many people may find the tradeoff worthwhile. And even if the public does not welcome the diminution of privacy that new technology entails, they may eventually reconcile themselves to this development as inevitable.... On the other hand, concern about new intrusions on privacy may spur the enactment of legislation to protect against these intrusions. This is what ultimately happened with respect to wiretapping. After *Katz,* Congress did not leave it to the courts to develop a body of Fourth Amendment case law governing that complex subject. Instead, Congress promptly enacted a comprehensive statute, see 18 U.S.C. §§ 2510–2522 (2006 ed. and Supp. IV), and since that time, the regulation of wiretapping has been governed primarily by statute and not by case law.

*Jones,* 132 S.Ct. at 962–63 (Alito, J., concurring in the judgment) (citations and footnote omitted).

¶ 11 Some other jurisdictions have discussed cell phones, smartphones, and text messages. In *United States v. Finley,* 477 F.3d 250 (5th Cir.2007) the Fifth Circuit held that a defendant had a reasonable expectation of privacy in his text messages on his employer-provided cell phone, and the subsequent warrantless search of the text messages was improper. The Fifth Circuit found that Finley had a possessory interest in the phone, that he took some steps to protect his privacy in the phone, and that while he might have expected his employer to see the messages he might reasonably have expected it to be free from government and public inspection; however, the opinion concluded, the search was permissible as a search incident to arrest. *Finley,* 477 F.3d at 259–60. *Finley* does not treat the subject in depth. Several courts have subsequently found a reasonable expectation of privacy in a personal cell phone's contents. *See, e.g., United States v. Davis,* 787 F.Supp.2d 1165,

1170 (D.Or.2011) (personal cell phone including text messages); *State v. Smith,* 124 Ohio St.3d 163, 920 N.E.2d 949, 955 (2009) (personal cell phone's general contents); *United States v. Zavala,* 541 F.3d 562, 577 (5th Cir.2008); *State v. Boyd,* 295 Conn. 707, 992 A.2d 1071, 1080 (2010). The Tenth Circuit has implicitly found a reasonable expectation of privacy in a personal cell phone, which does not preclude a search of the phone incident to arrest. *Silvan W. v. Briggs,* 309 Fed.Appx. 216, 224–25 (10th Cir.2009). A Louisiana appellate court has found that a person has a reasonable expectation of privacy in text messages where he was the exclusive user of the phone, though he was not the phone's owner or account holder. *State v. Bone,* 107 So.3d 49, 66 (La.App. 5 Cir.2012). The U.S. District Court for the Southern District of Florida also found a reasonable expectation of privacy in cell phone text messages, but mistakenly cited *Quon,* when *Quon* explicitly refused to make such a finding, casting doubt on the Florida ruling. *U.S. v. Gomez,* 807 F.Supp.2d 1134, 1140–41 (S.D.Fla.2011); *see also U.S. v. Quintana,* 594 F.Supp.2d 1291, 1299 (M.D.Fla.2009) (same). Idaho courts have found a reasonable expectation of privacy in cell phone records and text messages based on provisions of the Idaho Constitution, which offers greater protection than the United States Constitution. *State v. Branigh,* 155 Idaho 404, 313 P.3d 732, 739 (Idaho App.2013), and cases cited therein.

¶ 12 In an unpublished case, the U.S. District Court for Kansas discussed the unique privacy concerns raised by smartphones, finding that most users would have a reasonable expectation of privacy in the phones' contents. *United States v. Aispuro,* 2013 WL 3820017, *14 (D.Kan.2013); *see also United States v. McAleese,* 2013 WL 3479410, *8 n. 8 (E.D.Pa.2013). The Massachusetts Supreme Court, while allowing cell phones to be searched incident to arrest for a recent call list, distinguished smartphones, noting, "We have wisely not yet ruled whether a more intrusive search of a smartphone, or any other device capable of storing highly personal information, may be conducted as a search incident to arrest, even where the police may have probable cause to believe

that evidence of the crime of arrest may be found in the text messages, e-mails, or other data storage areas of the telephone where an individual maintains a reasonable expectation of privacy." *Commonwealth v. Phifer,* 463 Mass. 790, 979 N.E.2d 210, 217 (2012) (Gants, J., concurring).

¶ 13 In suppressing this evidence against Marcum, Judge Vassar relied on a Missouri district court of appeals case, *State v. Clampitt,* 364 S.W.3d 605 (Mo.App. W.D.2012). In *Clampitt,* the prosecutor obtained text message content, for the phone of the account holder himself (not, as here, a person who received and sent messages to the account holder), from a U.S. Cellular account through an investigative subpoena, not a warrant. *Clampitt* discussed whether a person had a reasonable expectation of privacy in the contents of text messages where the contents were in the possession of a third party, a telephone company. Relying on a Sixth Circuit case discussing email accounts, *United States v. Warshak,* 631 F.3d 266, 286 (6th Cir.2010), the Missouri court noted that mere third party access to subscribers' accounts did not automatically extinguish a reasonable expectation of privacy. *Clampitt,* 364 S.W.3d at 611. Judge Vassar quoted this passage with approval:

> Furthermore, society's continued expectation of privacy in communications made by letter or phone call demonstrates its willingness to recognize a legitimate expectation of privacy in the contents of text messages. What individuals once communicated through phone calls and letters can now be sent in a text message. Thus, as text messaging becomes an ever-increasing substitute for the more traditional forms of communication, it follows that society expects the contents of text messages to receive the same Fourth Amendment protections afforded to letters and phone calls. We therefore find that the trial court did not err in concluding that Clampitt had a reasonable expectation of privacy in the contents of his text messages.

*Clampitt,* 364 S.W.3d at 611.

¶ 14 All the cases from other jurisdictions discussed above, including *Clampitt,* lack an

important feature of this case: they all concern the reasonable expectation of the person who holds the account, owns the phone, or is personally given the phone for his use by his employer. Marcum is not that person. Marcum's strongest claim to an expectation of privacy is in the texts she sent to Miller's phone, which were received by him and recorded on Miller's account records. This is similar to mailing a letter; there is no expectation of privacy once the letter is delivered. *See, e.g., United States v. Gordon,* 168 F.3d 1222, 1228 (10th Cir.1999). It is like leaving a voice mail message, having the recipient receive and play the message, and then claiming the message is private. In an unpublished opinion the Eleventh Circuit found the defendants had no reasonable expectation of privacy in messages they had sent to or received from a third party, because once the messages were both transmitted and received, the expectation of privacy was lost. *United States v. Jones,* 149 Fed.Appx. 954, 959–60 (11th Cir.2005). The Minnesota Supreme Court found that a defendant had no reasonable expectation of privacy in cell phone records procured from a phone company where, although he possessed and used the phone, he was not the account holder and had no relationship with the phone company. *State v. Griffin,* 834 N.W.2d 688, 696–97 (Minn.2013). In an unpublished case, a Texas appellate court has found a defendant had no reasonable expectation of privacy in a telephone company's cell phone records for the accounts of co-defendants. *Anderson v. State,* 2013 WL 1819979, *11 (Tex.App.Dallas 2013); *see also Contreras v. State,* 2012 WL 3737714, *3 (Tex.App.Fort Worth 2012). A Washington appellate court found that a defendant had no reasonable expectation of privacy in text messages he sent to the cell phone of a third party, despite the characteristics of smartphones: "[I]t is the individual's decision to transmit a message to an electronic device that could be in anybody's possession—and not the receiving device's level of technological complexity—that defeats the individual's expectation of privacy in that communication." *State v. Hinton,* 169 Wash. App. 28, 280 P.3d 476, 482 (2012). The Washington Court distinguished cases discussing a defendant's expectation of privacy

in his own phone, saying "That an individual may have a reasonable expectation of privacy in certain contents of his or her own cell phone, including the sent and received text messages that are stored on the phone, is simply not at issue here." *Hinton,* 280 P.3d at 483. The same appellate court, in another case, found that a defendant gave implied consent to the recording of text messages he sent to a third party's smartphone under the state's privacy act, and the subsequent search of the smartphone did not violate the defendant's privacy. *State v. Roden,* 169 Wash.App. 59, 279 P.3d 461, 465 (2012). Oklahoma law similarly makes provision for interception of an electronic communication where the interceptor is party to the communication, or when one of the parties has given prior consent to the communication. 13 O.S. 2011, § 176.4.

¶ 15 Addressing only the narrow question before us, Marcum has not demonstrated a reasonable expectation of privacy in the records seized from U.S. Cellular for Miller's phone account. This Court adopts the reasoning of the courts which have concluded that there is no expectation of privacy in the text messages or account records of another person, where the defendant has no possessory interest in the cell phone in question, and particularly where, as here, the actual warrant is directed to a third party. The trial court abused its discretion in finding that Marcum had a reasonable expectation of privacy in the records of text messages sent from and received by Miller's phone, and kept by U.S. Cellular. *Neloms,* 2012 OK CR 7, ¶ 35, 274 P.3d at 170. This proposition is granted, and the case is reversed and remanded for further proceedings.

¶ 16 Given our resolution of Proposition II, Proposition III is moot. However, we note that, in finding the search warrant invalid, the district court rejected the State's reliance on the good faith exception, stating that this Court had not adopted that exception under these circumstances. This is not correct. This Court recently adopted the good faith exception.

> [The officers] were also acting in "good faith" and their actions fall directly under the criteria outlined by the United States

Supreme Court in *United States v. Leon*, 468 U.S. 897, 920–21, 104 S.Ct. 3405, 3419, 82 L.Ed.2d 677 (1984). Since this Court has previously held in *DeGraff v. State*, 1909 OK CR 82, 2 Okla.Crim. 519, 103 P. 538, 541; *State v. Thomason*, 1975 OK CR 148, ¶ 14, 538 P.2d 1080, 1086; and *Long v. State*, 1985 OK CR 119, ¶ 6, 706 P.2d 915, 916–17, that the Federal Constitution and the Oklahoma Constitution are the same in the rights protected, we find *Leon* is applicable here. The exclusionary rule is not applied when a law enforcement officer has conducted a search in "objectively reasonable reliance" upon a search warrant issued by a magistrate and has abided by the terms of the warrant even if the warrant is subsequently determined to be invalid. *See Leon*, 468 U.S. at 922, 104 S.Ct. at 3420. *State v. Sittingdown*, 2010 OK CR 22, ¶ 17, 240 P.3d 714, 718.

### DECISION

¶ 17 The Pittsburg County District Court's Order sustaining the defendants' motions to suppress in Case No. CF–2011–347 is **RE-VERSED** and the case **REMANDED** for further proceedings consistent with this Opinion. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2014), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

LEWIS, P.J., Concur in Result.

LUMPKIN, J., Specially Concur.

C. JOHNSON, A. JOHNSON, JJ, Concur.

LUMPKIN, Judge, Specially Concur.

¶ 1 I concur in the Court's decision and agree there is no expectation of privacy in text messages held by a third party. I write separately to address the issue in Proposition II, of whether Marcum had the legal capacity to claim the protection of the Fourth Amendment. Her "expectation of privacy" is no more than her "standing" to contest the warrant. It is not a trump over the search warrant. As I stated in my separate writing to *State v. Bass*, 2013 OK CR7, 300 P.3d 1193, while the Supreme Court in *Rakas*

distinguished between the traditional concept of "standing" and the "capacity to claim the protection of the Fourth Amendment", the term "standing" is still used by many courts. *See Davis v. United States*, —— U.S. ——, 131 S.Ct. 2419, 2431, 180 L.Ed.2d 285 (2011); *Kentucky v. King*, —— U.S. ——, 131 S.Ct. 1849, 1854 n. 1, 179 L.Ed.2d 865 (2011); *Brendlin v. California*, 551 U.S. 249, 259, 127 S.Ct. 2400, 2408, 168 L.Ed.2d 132 (2007); *United States v. Christian*, 43 F.3d 527, 530–31 (10th Cir.1994); *United States v. Obregon*, 748 F.2d 1371, 1374–75 (10th Cir.1984); *Marshall v. State*, 2010 OK CR 8, ¶ 48, 232 P.3d 467, 478; *State v. Howerton*, 2002 OK CR 17, ¶ 19, 46 P.3d 154, 158; *Anderson v. State*, 1999 OK CR 44, ¶ 18, 992 P.2d 409, 417; *Munson v. State*, 1988 OK CR 124, ¶ 34, 758 P.2d 324, 334.

¶ 2 Regardless of this dichotomy of labels, the bottom line is the courts are to determine the legal capacity of a defendant to challenge an issue based on the analysis of an "expectation of privacy". Once a court determines the legal capacity of a defendant to challenge the evidence at issue, the court can then address the substantive issues relating to the objection to the evidence.

¶ 3 In the present case, even if Marcum had established she had a reasonable expectation of privacy, or standing, to raise an objection to the search and seizure of the business records, she has not shown that the execution of the search warrant and resulting seizure of evidence was unreasonable under the Fourth Amendment. *See State v. Sittingdown*, 2010 OK CR 22, ¶ 17, 240 P.3d 714, 718 ("[t]he exclusionary rule is not applied when a law enforcement officer has conducted a search in 'objectively reasonable reliance' upon a search warrant issued by a magistrate and has abided by the terms of the warrant even if the warrant is subsequently determined to be invalid" citing *United States v. Leon*, 468 U.S. 897, 922, 104 S.Ct. 3405, 3420, 82 L.Ed.2d 677 (1984)).