2013 OK CR 7

**The STATE of Oklahoma, Appellant,**

v.

**Robert Harrell BASS, JR., Appellee.**

No. S–2012–363.

Court of Criminal Appeals of Oklahoma.

May 1, 2013.

Matthew R. Orendorff, Attorney At Law, Sallisaw, OK, attorney for defendant at trial.

Anthony J. Evans, Assistant District Attorney, Sequoyah County D.A.'s Office, Sallisaw, OK, attorney for state at trial.

Anthony J. Evans, Assistant District Attorney, Sequoyah County D.A.'s Office, Sallisaw, OK, attorney for appellant on appeal.

Donn F. Baker, Attorney At Law, Tahlequah, OK, attorney for appellee on appeal.

## SUMMARY OPINION

SMITH, Vice Presiding Judge.

¶1 On January 17, 2011, Robert Harrell Bass, Jr. was charged by Information in the District Court of Sequoyah County, Case No. CF–2011–26, with Trafficking in Illegal Drugs (marijuana), under 63 O.S. Supp.2007, § 2–415 (Count I), and Misdemeanor Possession of Drug Paraphernalia, under 63 O.S. 2011, § 2–405 (Count II).[1] On February 3, 2011, Bass filed a Motion to Quash, Suppress, and Dismiss.[2] On February 15, 2011, a preliminary hearing was held before the Honorable L. Elizabeth Brown, Associate District Judge. The State announced at the hearing that it would amend Count I to "Possession with Intent." At the conclusion of the hearing, the Honorable L. Elizabeth Brown denied Bass' motion to suppress, overruled his demurrer, and bound Bass over for trial on the Count I charge of Possession with Intent to Distribute. On February 16, 2011, the State filed an Amended Information, amending Count I to Possession of Controlled Drug with Intent to Distribute (marijuana), under 63 O.S.2011, § 2–401.

¶2 On March 24, 2011, Bass filed a new Motion to Quash, Suppress and Dismiss.[3] On April 19, 2012, a hearing was held on this motion before the Honorable J. Jeffrey Payton, District Judge. The court noted that it had reviewed the transcript of the preliminary hearing, a video of the stop, and the

filings of the parties and then announced that it was granting Bass' motion to suppress, without allowing any argument from the parties.[4] The court did not, however, dismiss the case against Bass. The State now appeals the district court's grant of Bass' motion to suppress, under 22 O.S.Supp.2011, § 1053(5). and the matter is properly before this Court.[5]

¶3 The State raises the following propositions of error in its appeal:

I. The Appellee does not have standing to challenge the search of the vehicle.

II. The Appellee's rights were not violated because his detention and subsequent search of the vehicle were reasonable under the law and *Miranda* does not apply.

¶4 In Proposition I, the State argues that Bass does not even have standing to challenge the search of the van, because he was not an authorized driver of the van. The State cites both *Minnesota v. Carter*, 525 U.S. 83, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998), and *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), in support of its "standing" argument. Yet in *Carter*, the Supreme Court described the "standing" approach to the question of *who* can properly assert a Fourth Amendment challenge to a search or seizure as "an analysis that this Court expressly rejected 20 years ago in *Rakas*." 525 U.S. at 87, 119 S.Ct. at 472 (citing *Rakas*); *see Rakas*, 439 U.S. at 139, 99 S.Ct. at 428 ("[W]e think the better analysis forthrightly focuses on the extent of a particular defendant's rights under the Fourth Amendment, rather than on any theoretically separate, but invariably intertwined concept of standing.").

1. Count II, which alleged possession of "plastic bags," is not involved in the current appeal.

2. The State filed a response to this motion on February 14, 2011.

3. The State filed a response to this motion on May 12, 2011; and Bass filed a reply to this response on June 15, 2011.

4. After the State noted its intent to appeal this ruling, the prosecutor asked, "I would just ask [ ] what in particular did you find wrong with the stop?" The court responded: "He released the guy to go and then turned him around and brought him back into the vehicle and started

questioning him again after about 30 minutes." The court then added, "And it was just unreasonable."

5. On July 26, 2012, over three months after granting Bass' motion to suppress, the district court filed "Findings of Fact and Conclusions of Law" regarding its grant of Bass' motion to suppress. This filing, which occurred after the record on appeal had been ordered from the district court, has been added to the record in this case pursuant to the State's motion to amend and supplement the record on appeal.

¶ 5 Nevertheless, the State is raising a plausible claim that because Bass was not listed as an authorized driver on the rental contract for the van, he did not have a reasonable expectation of privacy regarding the contents of that van. In *Carter,* the Supreme Court recognized as follows:

> [I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable; *i.e.,* one that has "a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society."

525 U.S. at 88, 119 S.Ct. at 472 (quoting *Rakas,* 439 U.S. at 143 n. 12, 99 S.Ct. at 430 n. 12).[6]

■ ¶ 6 The State argues that Bass was "committing the felony of unauthorized use of a vehicle." The record, however, does not establish this claim. The record establishes only that Bass was not the named renter of the van, nor was he listed as an authorized driver, and that the van was not reported stolen. The only evidence in the record regarding whether the person listed on the rental contract authorized Bass to drive the van is Bass' statement to Officer Cody Hyde that the named renter did authorize him to drive the van. Hence the question before this Court is whether the driver of a rental vehicle, who is not listed on the rental contract for that vehicle, but who claims to have been given permission to drive the vehicle by the person listed on the contract, has a reasonable expectation of privacy in the contents of that vehicle. Thus this is *not* a case where the vehicle stopped is determined to be stolen or where the driver admits that he or she had no legal right to be driving the vehicle at issue.

¶ 7 In *United States v. Soto,* 988 F.2d 1548 (10th Cir.1993), the court considered whether a driver who asserted that the car he was driving had been loaned to him by his uncle, whose name was on the car's registration, had a protected Fourth Amendment privacy interest in the car.[7] The *Soto* court found that "[w]here the defendant offers sufficient evidence indicating that he has permission of the owner to use the vehicle, the defendant plainly has a reasonable expectation of privacy in the vehicle." *Id.* at 1552 (quoting *United States v. Rubio-Rivera,* 917 F.2d 1271, 1275 (10th Cir.1990)). The *Soto* court then concluded that because the defendant had produced a registration bearing the name "Corral" and stated that Mr. Corral had loaned him the car, in combination with the fact that the car had not been reported stolen, the defendant had a sufficient expectation of privacy in the vehicle to challenge a search of that vehicle in a motion to suppress.[8]

¶ 8 In *Parker v. State,* 182 S.W.3d 923, 924 (Tex.Crim.App.2006), the Texas Court of Criminal Appeals recently addressed a situation where the driver of a car stopped for "following another car at an unsafe distance" was driving a rental car that had been leased by his girlfriend. The driver was not on the rental The court stated.[9] "The question in

---

**6.** In *Rakas,* the Supreme Court noted that this inquiry "requires a determination of whether the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect." *See Rakas,* 439 U.S. at 140, 99 S.Ct. at 429.

**7.** The driver of the car (*i.e.,* Soto) was an illegal alien and initially gave a false name and a false driver's license. When he produced the registration for the car, it showed the owner to be a person whose last name was "Corral." Soto then stated that Mr. Corral was his uncle and that he had loaned him the car for a trip from Chicago to Los Angeles and back. Soto was not able to provide Mr. Corral's home address. However, when the stopping officer performed an NCIC check on the car, he learned that it had

not been reported stolen. *See Soto,* 988 F.2d at 1550.

**8.** The *Soto* court wrote:

> [D]efendant here claimed to have borrowed the car from the rightful owner, and produced a registration bearing that individual's name. Although this evidence is not determinative of defendant's right to possess the vehicle, absent evidence that defendant wrongfully possessed the vehicle[,] it is sufficient to confer standing on him to challenge the subsequent search of the car.

*See id.* at 1553.

**9.** In fact, the rental agreement expressly stated that the car's renter was not allowed to permit

the case before us is whether someone driving a rental car with permission only from the person who rented the car has an expectation of privacy that society is prepared to recognize as reasonable." *Id.* at 926. The *Parker* court reviewed authority from the United States Supreme Court, other Texas cases, and other jurisdictions, *id.* at 925–26, and *rejected* the approach of focusing upon whether the car rental contract allowed the renter to allow others to drive the vehicle.[10] The court then concluded that under the factual circumstances of that case, "society would recognize as reasonable Appellee's expectation of privacy in the use of his girlfriend's rental car with her permission even though he was not listed as an authorized driver on the rental agreement." *Id.* at 927.

¶ 9 Given these authorities and the analysis therein, this Court declines to find that Bass, who was in sole possession of the van he was driving, did not have a reasonable expectation of privacy in the contents of the van. Although Bass was not listed on the rental contract for the van, he told Officer Hyde that the person listed on the contract gave him permission to drive the van; and the record contains no evidence to the contrary. Furthermore, the rental agency confirmed that the van had not been reported stolen. Under these circumstances, we find that Bass had a right to challenge the search of the van, which led to the discovery of the marijuana that Bass was then charged with possessing.[11]

■ ¶ 10 In Proposition II, the State argues that the district court abused its discretion in granting Bass' motion to suppress, because the stop of the van, detention of Bass, and subsequent search of the van were all reasonable and proper. This Court reviews the district court's grant of Bass' motion to suppress for abuse of discretion. *See State v. Love,* 1998 OK CR 32, ¶ 2, 960 P.2d 368, 369 ("In appeals prosecuted pursuant to 22 O.S.1991, § 1053, this Court reviews the trial court's decision to determine if the trial court abused its discretion.").

¶ 11 Officer Hyde's original stop of the white van was clearly a valid traffic stop. Bass does not challenge the validity of the original stop, which was based upon Hyde's observation that the van was following another vehicle too closely and that it had crossed over the "fog line" onto the shoulder. This valid traffic stop ended, however, when Hyde gave Bass the warnings that he had written up for him, handed Bass his license, and told him to "be careful."

¶ 12 In *State v. Goins,* 2004 OK CR 5, 84 P.3d 767, this Court addressed the question of when an officer may continue to question a person originally detained for a valid traffic stop, after the initial traffic stop has concluded. We found that an officer can continue to question a driver after a valid traffic stop has concluded in two specific situations: "First, the officer may detain the driver for questioning unrelated to the initial stop if he has an objectively reasonable and articulable suspicion illegal activity has occurred or is occurring. Second, further questioning unrelated to the initial stop is permissible if the initial detention has become a consensual encounter." *Id.* at ¶ 13, 84 P.3d at 770 (quoting *United States v. Hunnicutt,* 135 F.3d 1345, 1349 (10th Cir.1998)). The Supreme Court has recognized that the issue of whether a detaining officer has an adequate and objective basis for detaining an individual suspected of wrongdoing is based upon "the totality of the circumstances." *See United*

---

anyone else to drive the car without the permission of the rental agency; and the defendant's girlfriend acknowledged at the hearing on his motion to suppress that she knew she was violating her rental contract when she loaned her boyfriend the car. *See Parker,* 182 S.W.3d at 924.

**10.** *Id.* at 927 ("Rather than continuing to allow the terms of a contract to determine whether an individual may assert his constitutional rights, we instead return to a *Smith v. Maryland* analysis of whether the defendant's expectation of privacy is one that society recognizes as reasonable or justifiable under the circumstances."); *see Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979) (outlining reasonable expectation of privacy test in this context).

**11.** In its 7/26/12 Findings of Fact and Conclusions of Law, the district court found that Bass had standing to challenge the search of the van he was driving, citing *Soto* and *Smith v. Maryland.*

*States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002).

¶ 13 After the traffic stop was over and Bass had just exited Hyde's OHP vehicle, Hyde asked Bass if he would mind answering a few more questions. When Bass then voluntarily got back in Hyde's car, a consensual encounter began. During this encounter, Bass voluntarily answered Hyde's question about whether he had any weapons or anything illegal in the van. (Bass said "no.") Hyde then asked Bass for permission to search the van, but Bass said "no" and asked if he could leave. Hyde then told Bass that he was *not* free to leave and that he needed to stay in the patrol car. The consensual encounter ended at this time; and the question for this Court is whether, at this point, Hyde had adequate, articulable "reasonable suspicion" that illegal activity had occurred or was occurring, in order to detain Bass any longer.

¶ 14 This Court notes that it is irrelevant to the legality of the ensuing detention that Officer Hyde originally attempted to get Bass to engage in a consensual encounter and to voluntarily agree to a search of his van. There is nothing improper in an officer—who may *also* have adequate reasonable suspicion to detain a particular individual—initially attempting to prolong his interaction with that person (whom he suspects of illegal activity) through the voluntary consent of that person. This is what Hyde attempted to do in the current case. An officer who has both adequate reasonable suspicion *and* voluntary consent can feel quite comfortable that his continuing encounter with the stopped individual is lawful and is unlikely to be found improper at a later time.

¶ 15 In the district court's brief comments at the time it granted Bass' motion to suppress and in the court's later written findings, the court appears troubled (and even offended) by the fact that Officer Hyde "released" Bass to go and then, just moments later, detained him—without any new suspicious behavior on the part of Bass. This Court emphasizes that the legal question remains whether, at the point Hyde detained Bass, the totality of the circumstances provided Hyde with an adequate, particularized, and objective basis for doing so. This Court does not hesitate to find that Officer Hyde had an adequate reasonable suspicion of Bass under this standard.

¶ 16 Bass originally told Officer Hyde that he himself rented the white van, yet he was unable to produce the rental contract. A short time later, Hyde learned from the rental company that it was *not* Bass who actually rented the van, but someone else—and that the van was supposed to be returned in San Francisco in four days, even though Bass was going east and had stated that he was headed home to North Carolina. The fact that Bass then changed his story and said that yes, the other person did actually rent the van—and that they had actually been together in San Francisco, though Bass had earlier stated he was traveling alone—but that the other person rented the van *for Bass,* only increased the suspiciousness of Bass' situation. The State emphasizes Hyde's testimony about how nervous Bass appeared during the stop—that his hands were shaking; his voice was cracking; he had visible sweat beads on his face, *etc.* This Court finds that Hyde's testimony in this regard supports our conclusion herein, but that Bass' lies and shifting stories are the most important factors in this Court's determination that Hyde did have adequate reasonable suspicion to detain Bass. *See State v. Paul,* 2003 OK CR 1, ¶ 3, 62 P.3d 389, 390 (inconsistent statements about destination and questionable proof of authority to operate vehicle provide reasonable suspicion).

¶ 17 In its 7/26/12 "Findings of Fact and Conclusions of Law," the district court found that "Bass's actions in the patrol vehicle as testified to by Trooper Hyde did not establish an objectively reasonable and articulable suspicion that the vehicle contained illegal contraband." This approach, however, misunderstands the analysis at issue. First, neither Hyde nor this Court is limited to considering the "actions" of Bass while he was "in the patrol vehicle" in making the determination of whether Hyde had an adequate and objective "reasonable suspicion" at the time he told Bass that he was not free to leave. The dishonest and shifting *words* of Bass,

from the time Hyde first interacted with him, while Bass was still in the van, and throughout the encounter, were all part of the reasonable suspicion that developed in this case. Hence the district court unreasonably limited the basis for its reasonable suspicion analysis. In addition, the law only requires that Hyde have a reasonable suspicion that some kind of illegal activity has occurred or is occurring at the time he begins detaining Bass. The State is not required to establish a reasonable suspicion that the van "contained illegal contraband" to justify the short detention of Bass that occurred while Hyde was getting out his drug dog and taking him around the van.

¶ 18 This Court finds that Hyde had adequate reasonable suspicion to detain Bass for the few minutes that passed while Hyde got his trained drug detection dog out of the backseat of his OHP vehicle and then took the dog around the white van.[12] When the dog then visibly "alerted" on the back of the van, Hyde was justified in allowing the dog to enter the van, *i.e.*, Hyde had probable cause to search the van, at which time the dog further alerted on certain large bags in the rear of the van.[13] At that point, Hyde had probable cause to open and search these bags, which contained multiple, separate bags of marijuana. Hyde was then authorized to arrest Bass, which he did. *See Paul,* 2003 OK CR 1, ¶ 3, 62 P.3d 389 (finding search of vehicle proper after drug-dog-sniff

"hit" established probable cause, in factually parallel case).

¶ 19 The district court abused its discretion in granting Bass' motion to dismiss. Hence the grant of Bass' motion to suppress must be reversed, and this matter must be remanded to the district court.

### Decision

¶ 20 The decision of the district court granting Bass' motion to suppress is **RE-VERSED,** and this case is **REMANDED** to the district court for further proceedings consistent with this opinion. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2013), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

LEWIS, P.J. and A. JOHNSON, J.: concur.

C. JOHNSON, J.: specially concur.

LUMPKIN, J.: concur in part/dissent in part.

LUMPKIN, Judge: Concurring in part/Dissenting in part.

¶ 1 I concur in the result reached, however, I do not agree with the Opinion's analysis and determination of Proposition One. Instead, I find that Appellee did not have the capacity to claim protection of the Fourth Amendment in the present case.[1]

---

**12.** This Court has reviewed the video of this traffic stop and notes that there was no significant delay in this process—and certainly no 30–minute delay—since Hyde's dog was in his backseat.

**13.** In *Florida v. Harris,* —— U.S. ——, 133 S.Ct. 1050, 1053–54, 185 L.Ed.2d 61 (2013), the Supreme Court recently addressed the issue of whether a particular drug-dog's "alert" adequately established probable cause to search a vehicle, even if on two occasions a post-sniff-search (of the same defendant's truck) did not turn up any of the drugs for which the dog had been trained to alert. The Court noted that the question of "probable cause" in this context is simply whether the facts available to the officer warranted a reasonable belief that contraband or evidence of a crime would be present in the area to be searched. *See id.* at 1055 (all citations omitted). The *Harris* Court emphasized that this determination involves a "practical and com-

mon-sensical standard," based upon "the totality of the circumstances." *Id.* (citations omitted); *see also id.* (rejecting "rigid rules, bright-line tests, and mechanistic inquiries in favor of a more flexible, all-things-considered approach"). The *Harris* Court unanimously found that the Florida drug-dog's alert in that case established probable cause to search the defendant's truck, *id.* at 1059, and struck down a contrary decision by the Florida Supreme Court as being too rigid, too strict, and as mistakenly assuming that an officer's failure to discover particular drugs after a drug dog alerted on a vehicle necessarily established that the dog's alert was erroneous (*i.e.,* "a false positive"). *Id.* at 1056–57.

**1.** In *Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978), the Supreme Court distinguished between the traditional concept of "standing" and the "capacity to claim the protection of the Fourth Amendment." However, I note that the term "standing" is sometimes

¶ 2 In reaching the contrary conclusion, the Opinion overlooks more persuasive authority and mistakenly applies the wrong analysis. The Opinion relies upon *United States v. Soto*, 988 F.2d 1548 (10th Cir.1993). However, *Soto* is distinguishable from the present case. In *Soto*, the defendant indicated that the car had been loaned to him by his uncle, produced a registration bearing that name, and a computer check revealed that the vehicle had not been reported stolen. *Soto*, 988 F.2d at 1550, 1553.

¶ 3 In the present case, Appellee was driving a van eastbound on Interstate 40 in Eastern Oklahoma when Trooper Hyde stopped him for two traffic violations. (P.H. 13–14). Appellee informed Hyde that he had rented the van in California and intended to drop the vehicle off in his home state of North Carolina. (P.H. 14–15, 17, 33). He further explained that he had flown to California by himself to look around. He rented the vehicle to drive home because there was a mechanical issue with his plane. (P.H. 17–19). Appellee was unable to provide Hyde with a copy of the rental agreement. (P.H. 15, 29). Trooper Hyde checked and determined that the van had not been reported stolen. (P.H. 30). Hyde then contacted the rental company. He discovered that Appellee was not on the rental agreement, the van had been rented by a third party that was not present, there were no additional drivers listed with the rental agency, and the van was supposed to be returned to the airport in San Francisco. (P.H. 14–16, 18, 32–33). Appellee overheard Hyde's conversation with the rental company and changed his story. Appellee informed Hyde that he had met a friend in Chicago; they had flown to California, and stayed together for the duration of their trip. He claimed that this friend had rented the vehicle for him and provided Trooper Hyde with the name under which he thought the vehicle was rented. (P.H. 18–19). Based upon Appellee's inconsistent statements and his physical behavior, Trooper Hyde did not believe that Appellee was being truthful

when he claimed that a friend had rented the vehicle for him. (P.H. 35).

¶ 4 As *Soto* did not involve a non-authorized driver operating a rental car, it is clearly distinguishable from the present case. *Soto* may also be distinguished from the present case based upon the fact that Appellee provided conflicting stories as to how he acquired possession of the van and the Trooper's belief that Appellee was not being truthful.

¶ 5 Instead, the present case is nearly identical to the Tenth Circuit's opinion in *United States v. Roper*, 918 F.2d 885 (10th Cir.1990). In *Roper*, the defendant was driving a vehicle through Oklahoma that the backseat passenger's common-law wife had rented. *Id.*, 918 F.2d at 886. The rental agreement stated that the car could only be driven by the lessee and could not be driven outside the State of California without written permission. *Id.* Neither the defendant nor the backseat passenger was listed as an additional driver on the rental contract. *Id.*, 918 F.2d at 888. The Tenth Circuit determined that the defendant did not have standing to challenge the search of the vehicle he was driving because he was not the owner nor was he in lawful possession or custody of the vehicle at the time of the stop. *Id.*, 918 F.2d at 887–88.

¶ 6 *Roper* cited and followed the opinion in *United States v. Obregon*, 748 F.2d 1371 (10th Cir.1984). *Id.*, 918 F.2d at 887–88. In *Obregon*, the defendant was driving a rented vehicle and was not named on the rental agreement or any other documents, either as the renter or as an authorized driver. *Obregon*, 748 F.2d at 1374. The Tenth Circuit determined that the district court's holding that the defendant did not have a legitimate expectation of privacy in the car he was driving and therefore did not have standing to challenge the stop and subsequent search of the car by police was not clearly erroneous. *Id.*, 748 F.2d at 1375.

---

still used. *See Davis v. United States*, —— U.S. ——, 131 S.Ct. 2419, 2431, 180 L.Ed.2d 285 (2011); *Kentucky v. King*, —— U.S. ——, 131 S.Ct. 1849, 1854 n. 1, 179 L.Ed.2d 865 (2011); *Brendlin v. California*, 551 U.S. 249, 259, 127 S.Ct. 2400, 2408, 168 L.Ed.2d 132 (2007); *Georgia v. Randolph*, 547 U.S. 103, 126 S.Ct. 1515, 1532, 164 L.Ed.2d 208 (2006) (Roberts, C.J., and Scalia, J., dissenting).

¶ 7 Although none of these cases are controlling on this Court, I find that *Roper* and *Obregon* are much more persuasive as the facts in those two cases are nearly identical to the present case. The opinion in *Soto* is simply too far afield.

¶ 8 The Opinion also relies upon *Parker v. State*, 182 S.W.3d 923 (Tex.Crim.App.2006), however, the Texas Court of Criminal Appeals did not find that an unauthorized operator of a rental car has a legitimate expectation of privacy in the vehicle. *Id.*, 182 S.W.3d at 926–27. Instead, *Parker* held that:

> We disagree with the court of appeals' use of a bright-line rule stating that only those listed on a rental agreement as authorized drivers have an expectation of privacy in the vehicle and standing to contest a search. Instead, the court should have considered the circumstances surrounding the use of the vehicle, as well as the nature of the relationship between the driver and the lessee, to determine whether the driver had a legitimate expectation of privacy that society would recognize as reasonable as outlined in *Smith v. Maryland* . . . .

*Id.*, 182 S.W.3d at 927, *citing Smith v. Maryland*, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979).

¶ 9 In *Parker*, the defendant's girlfriend, the renter of the vehicle, testified at the suppression hearing that she rented the car because her personal vehicle was being repaired. *Id.*, 182 S.W.3d at 924, 927. Although the defendant was not listed on the rental agreement as an authorized driver, the girlfriend intended to share the rental car with the defendant in the same way they normally shared her car. *Id.*, 182 S.W.3d at 924. Because the record reflected that the defendant had the renter's express permission to drive the car and there was nothing to suggest that the defendant knew the terms of the rental agreement or that he was not listed as an authorized driver, the court found that the defendant had a reasonable expectation of privacy in the vehicle. *Id.*, 182 S.W.3d at 927.

¶ 10 The Texas Court of Criminal Appeals is not the only court to reject a bright-line rule. In *United States v. Kennedy*, 638 F.3d 159 (3rd Cir.2011), the Third Circuit Court of Appeals determined whether the driver of a rental car that had been lent the car by the renter, but who had not been listed on the rental agreement as an authorized driver, had a legitimate expectation of privacy in the car. *Id.*, 638 F.3d at 161.

> [W]e concur with the majority of circuits that have considered this factual scenario and conclude that, as a general rule, the driver of a rental car who has been lent the car by the renter, but who is not listed on the rental agreement as an authorized driver, lacks a legitimate expectation of privacy in the car unless there exist extraordinary circumstances suggesting an expectation of privacy. *See, e.g., United States v. Seeley*, 331 F.3d 471, 472 n. 1 (5th Cir.2003)(per curiam) (finding that driver of rental car lacked standing where he was not the renter or authorized driver); *United States v. Wellons*, 32 F.3d 117, 119 (4th Cir.1994)(holding that unauthorized driver of rental car who had been given permission to drive by co-defendant, an authorized driver, lacked standing); *United States v. Roper*, 918 F.2d 885, 887–88 (10th Cir.1990) (defendant lacked standing where car he was driving was rented by co-defendant's common law wife and he was not listed as additional driver in rental contract); *cf. United States v. Smith*, 263 F.3d 571, 586 (6th Cir.2001) (noting that "as a general rule, an unauthorized driver of a rental vehicle does not have a legitimate expectation of privacy in the vehicle" but nevertheless finding that the defendant had standing in light of the "truly unique" facts of that case).

*Id.*, 638 F.3d at 165.

¶ 11 In *United States v. Smith*, 263 F.3d 571 (6th Cir.2001), the Sixth Circuit Court of Appeals stated:

> We acknowledge that as a general rule, an unauthorized driver of a rental vehicle does not have a legitimate expectation of privacy in the vehicle, and therefore does not have standing to contest the legality of a search of the vehicle. However, we refuse to adopt a bright line test, as the government seems to advocate, based solely on whether the driver of a rental vehicle

is listed on the rental agreement as an authorized driver. Such a rigid test is inappropriate, given that we must determine whether Smith had a legitimate expectation of privacy which was reasonable in light of all the surrounding circumstances. *See Rakas,* 439 U.S. at 152, 99 S.Ct. 421 (Powell, J., concurring). "In considering the reasonableness of asserted privacy expectations, the [Supreme] Court has recognized that no single factor invariably will be determinative." *Id.*

*Id.,* 263 F.3d at 586. In *Smith,* the Sixth Circuit distinguished *Obregon* and related cases:

Smith is unlike any of the drivers in any of these cases, because he personally had a business relationship with the rental company. Smith called the rental company to reserve the vehicle and was given a reservation number. He provided the company with his credit card number, and that credit card was subsequently billed for the rental of the vehicle. His wife, Tracy Smith, picked up the vehicle using the confirmation number given to Smith by the company. Smith had an intimate relationship with Tracy Smith, the authorized driver of the vehicle who gave him permission to drive it. This is not a case in which a driver was simply granted permission by the "renter" of the vehicle, because in this case Smith was the *de facto* renter of the vehicle. His relationships to the vehicle and its authorized driver were not "attenuated" as were the relationships in *Obregon, Sanchez, Wellons* and *Muhammad.* Although Smith was not technically in privity of contract with the rental company as was the driver in Cooper, he did have a business relationship with the company. His business relationship with the rental company and his intimate relationship with his wife, the authorized driver of the vehicle, are relationships which are recognized by law and society. Based on these relationships, as well as the fact that he personally paid for the vehicle, Smith had both a subjective and an objective legitimate expectation of privacy.

*Id.,* 263 F.3d at 586–87.

¶ 12 I, too, find that a bright-line rule is inconsistent with the Supreme Court's established Fourth Amendment jurisprudence. The core of the Fourth Amendment is " '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.' " *Kyllo v. United States,* 533 U.S. 27, 31, 121 S.Ct. 2038, 2041, 150 L.Ed.2d 94 (2001). To claim the protection of the Fourth Amendment an individual must have a "legitimate expectation of privacy" that has been invaded by the government. *Smith v. Maryland,* 442 U.S. at 740, 99 S.Ct. at 2580, *quoting Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978). The inquiry as to whether an individual has a legitimate expectation of privacy embraces two questions. *Id.* First, whether the individual, by his conduct has exhibited an actual (subjective) expectation of privacy, that is to say that, the individual has shown that he seeks to preserve something as private. *Id.* Second, whether the individual's subjective expectation of privacy, viewed objectively, is justifiable under the circumstances, namely, one that society is prepared to recognize as reasonable. *Id.* This Court is not free to adopt a bright-line rule but must consider the individual's conduct as well as the surrounding circumstances.

¶ 13 I further note that the individual asserting the right bears the burden of proving that he had a legitimate expectation of privacy in the area searched. *Anderson v. State,* 1999 OK CR 44, ¶ 18, 992 P.2d 409, 417, *citing Rawlings v. Kentucky,* 448 U.S. 98, 105, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980). The Supreme Court has further delineated what must be shown to establish that a subjective expectation of privacy is justifiable under the circumstances.

[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable; *i.e.,* one that has "a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society."

*Minnesota v. Carter*, 525 U.S. 83, 88, 119 S.Ct. 469, 472, 142 L.Ed.2d 373 (1998), *quoting Rakas*, 439 U.S. at 143–44 n. 12, 99 S.Ct. at 430 n. 12.

¶ 14 Applying the proper analysis to the present case, Appellee did not prove that he had a legitimate expectation of privacy in the rental van. Appellee's subjective expectation of privacy, if any, in the van was not justifiable under the circumstances. Appellee never established a source for the expectation in either property law or as recognized by society.

¶ 15 As to property law, Appellee never established that he was lawfully in possession of the van. The record reveals that Appellee did not rent the van. He was not listed as an authorized driver on the rental agreement. Appellee did not present any testimony or evidence in support of his motion to suppress. He simply relied upon the Trooper's testimony from the preliminary hearing. As such, the present case is distinguishable from *Parker*. The Trooper's testimony as to Appellee's contradictory statements as to how he came into possession of the van are simply insufficient to prove that the renter had permitted Appellee to drive the van. This is particularly the circumstance where the Trooper has validly testified that he suspected Appellee was not being truthful.

¶ 16 As to societal recognition, Appellee's relationships to the vehicle and its authorized driver were attenuated. There is no evidence of a prior vehicle sharing arrangement between boyfriend and girlfriend as shown in *Parker*. There is no indication of a close relationship with the rental company and the renter as shown in *Smith*.

¶ 17 Reviewing the surrounding circumstances, Appellee failed to establish that he had the capacity to claim protection of the Fourth Amendment as to the search of the rental van. Therefore, I would reverse and remand the case on this basis.

C. JOHNSON, Judge, Specially Concur.

¶ 1 I concur in the Court's disposition of this case. The trial court seemed disturbed by the fact that the officer either had changed his mind about letting the motorist go about his business, or had never really intended to let the motorist leave, and was simply hoping the motorist would consent to a vehicle search. Whether such conduct on the part of police might be unreasonable, under some other fact pattern, is an issue this Court can leave for another day. In my view, the officer had plenty of reasonable suspicion to detain the motorist for additional investigation before that point in their encounter. The details of the motorist's trip, as initially related by him, were at odds with information the officer obtained from the car-rental company. The motorist then changed his story to accommodate these new facts. The motorist's story simply did not add up, and warranted additional investigation. There was no unreasonable delay in that effort, as a drug-sniffing dog was already on the scene, and its reaction to the vehicle quickly provided probable cause for a full-blown arrest.