FUENTES v. STATE



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:FUENTES v. STATE

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 FUENTES v. STATE
2021 OK CR 18
Case Number: F-2020-115
Decided: 07/15/2021
PEDRO PABLO FUENTES, Appellant v. THE STATE OF OKLAHOMA, Appellee.
Cite as: 2021 OK CR 18, __ __

 

 

O P I N I O N

ROWLAND, VICE PRESIDING JUDGE:

¶1 On July 16, 2016, Appellant Pedro Pablo Fuentes was stopped by police while driving on Interstate 40 at Morgan Road in Canadian County. He later testified that he was fully aware of the nearly ten pounds of methamphetamine hidden in his car as he drove back from Phoenix, Arizona. He was not fully aware that for the past six weeks he had been under investigation for drug trafficking, and that for the past four weeks his every vehicular movement had been monitored by law enforcement via an electronic tracking device affixed to his car pursuant to a court order. Fuentes was charged in the District Court of Canadian County with Aggravated Trafficking in Illegal Drugs After Former Conviction of Two or More Felonies in violation of 63 O.S.Supp.2015, § 2-415[1] in case number CF-2016-560. The Honorable Jack D. McCurdy, II, District Judge, presided over his non-jury trial, found him guilty, and sentenced him to thirty-five years imprisonment and a $50,000.00 fine. The sole issue on appeal is:

(1) whether the trial court erred when it denied his motion to suppress.

¶2 More specifically, the issue is whether, in detaining a motorist based upon reasonable suspicion that crime is afoot, an officer may rely upon information possessed by other officers learned through an investigation preceding the traffic stop, or whether the officer is limited to the facts he or she personally observes during the traffic detention. We find the detention was not unlawful, relief is not required, and affirm the Judgment and Sentence of the district court.

A. The Facts

¶3 Around June 6, 2016, Oklahoma City Police Detective Chad Cook, with the Criminal Enterprise Task Force, learned information from a known reliable and well-vetted confidential informant (CI) that Fuentes and other members of his family were involved with drug trafficking. The CI gave Detective Cook specific information about Fuentes including a physical description of him, the car he was driving, and the residence from which he and other family members were trafficking drugs, and indicated this activity involved large sums of money and methamphetamine. Detective Cook opened an investigation and began attempting to corroborate this information. He got a break in this regard on June 13, 2016 when police were called to the scene of a domestic disturbance involving Fuentes at his mother's house. While there officers saw what they would later describe as "a good amount of methamphetamine" and money in the kitchen.

¶4 Armed with this information, Detective Cook sought and obtained a search warrant authorizing the installation and use of an electronic tracking device on the car Fuentes drove. Pursuant to this warrant, the tracking device was installed on Fuentes' car on or about June 20, 2016.

¶5 During this same general time period, investigating detectives received information from a second reliable CI that Fuentes was going to travel west to pick up a load of drugs and bring them back to Oklahoma. While monitoring the tracking device, Detective Cook saw the vehicle driven to Phoenix, Arizona, a city known to Detective Cook as a distribution hub for illegal drugs. A team of task force members organized to follow the car back into Oklahoma City and conduct surveillance on it. As the vehicle approached Oklahoma City, Detective Cook alerted Oklahoma City Police, including Sergeant John Ricketts, about the moving surveillance. Detective Cook advised the Oklahoma City officers of the make, model, and tag number of the car he was tracking and surveilling and that it was suspected to be involved in drug trafficking. Detective Cook requested that an Oklahoma City officer stop the vehicle once it was in Oklahoma County if any traffic violations were observed.

¶6 On this day, July 16, 2016, Oklahoma City Police Sergeant John Ricketts was working highway interdiction when he received information from officers with the Special Projects Unit that they "had a tracker on a vehicle that was coming in that would be carrying a load of dope." Besides being informed of the make, model, and color of the vehicle at issue, Sergeant Ricketts was also told that the driver would be Pedro Fuentes and he was suspected of going out of state to pick up a load of drugs and was bringing it back. Sergeant Ricketts was asked to stop Fuentes if he observed Fuentes commit a traffic violation.

¶7 At around 9:00 p.m. that evening, near I-40 and Morgan Road, Sergeant Ricketts saw the car driven by Fuentes speeding and failing to signal while making lane changes.[2] He stopped the vehicle and made contact with Fuentes, who was the driver and sole occupant of the vehicle. Sergeant Ricketts told Fuentes he was being stopped for traffic violations and Sergeant Ricketts asked Fuentes to step out of the car while he called for another unit and ran computer checks. Sergeant Ricketts also requested the assistance of a drug-detecting dog. When the K9 unit arrived, the dog walked around Fuentes' car and alerted. Officers located a duffle bag containing approximately 4,441 grams of methamphetamine in the backseat of the vehicle.

¶8 Fuentes testified at trial and admitted that every item found in the car, including the duffle bag and methamphetamine contained therein, belonged to him. He contested only the legality of the search and seizure.

B. The Litigation

1. Motion to Suppress Before the District Court 

¶9 Fuentes complains in this appeal that his conviction should be reversed and remanded to the district court with instructions to dismiss because the methamphetamine upon which his conviction was based was discovered pursuant to an illegal search and seizure. Prior to trial, Fuentes filed a Motion to Suppress in which he argued that the search and seizure was unconstitutional because the traffic stop during which the drugs were found was extended beyond the time necessary to effectuate its purpose and there was insufficient reasonable suspicion to extend the stop. In a hearing held on December 19, 2019, the court denied this motion; the court then denied his motion to reconsider on January 6, 2020. Defense counsel's objection at trial was also overruled.

2. Our Standard of Review

¶10 Fuentes' objections below preserved this issue and, on appeal, we review the trial court's ruling on the motion to suppress for abuse of discretion. Mason v. State, 2018 OK CR 37, ¶ 17, 433 P.3d 1264, 1270. An abuse of discretion is an unreasonable or arbitrary action made without proper consideration of the relevant facts and law - a clearly erroneous conclusion and judgment, clearly against the logic and effect of the facts. Neloms v. State, 2012 OK CR 7, ¶ 35, 274 P.3d 161, 170). "When reviewing a trial court's ruling on a motion to suppress evidence based on a complaint of an illegal search and seizure, this Court defers to the trial court's findings of fact unless they are not supported by competent evidence and are therefore clearly erroneous. We review the trial court's legal conclusions based on those facts de novo." State v. Alba, 2015 OK CR 2, ¶ 4, 341 P.3d 91, 92 (internal citations omitted). See also Seabolt v. State, 2006 OK CR 50, ¶ 5, 152 P.3d 235, 237.

C. The Law

1. Constitutional Provisions on Search and Seizure

¶11 Both the United States and Oklahoma constitutions protect one's right to be free from unreasonable searches and seizures. U.S. Const. amend. IV; Okla. Const. Article II, Section 30. It is well- established that a traffic stop is a seizure under the Fourth Amendment. State v. Strawn, 2018 OK CR 2, ¶ 21, 419 P.3d 249, 253 (quoting Seabolt, 2006 OK CR 50, ¶ 6, 152 P.3d at 237). To meet this requirement of reasonableness, the scope and duration of a traffic stop must be related to the purpose of the stop and must last no longer than is necessary to effectuate the stop, in this case to investigate the observed traffic violations. Seabolt, 2006 OK CR 50, ¶ 6, 152 P.3d at 237 (citing Florida v. Royer, 460 U.S. 491, 500 (1983); Terry v. Ohio, 392 U.S. 1, 20 (1968)). "If the length of the investigative detention goes beyond the time necessary to reasonably effectuate the reason for the stop, the Fourth Amendment requires reasonable suspicion that the person stopped has committed, is committing or is about to commit a crime." Seabolt, 2006 OK CR 50, ¶ 6, 152 P.3d at 237-38. It is the prosecution's burden to prove the reasonableness of an officer's suspicion. United States v. Lopez, 849 F.3d 921, 925 (10th Cir. 2017) (citing United States v. Pettit, 785 F.3d 1374, 1379 (10th Cir. 2015). "[R]easonable suspicion is not, and is not meant to be, an onerous standard." Pettit, 785 F.3d at 1379 (quoting United States v. Kitchell, 653 F.3d 1206, 1219 (10th Cir. 2011)). In determining the reasonableness of a detention under the Fourth Amendment, we employ the "totality of the circumstances" test. State v. Bass, 2013 OK CR 7, ¶ 12, 300 P.3d 1193, 1196--97. See also United States v. Arvizu, 534 U.S. 266, 273 (2002).

¶12 Fuentes notes that at the inception of the stop Sergeant Ricketts explained that the stop was for traffic violations. Sergeant Ricketts asked Fuentes for his driver's license and he kept it while he ran computer checks and wrote the citation. During this time, Sergeant Ricketts also called for backup and requested the assistance of a drug sniffing dog, or K9 unit. After Sergeant Ricketts finished the computer check and writing the citation, he detained Fuentes longer, prohibiting him from leaving while a K9 officer walked the drug dog around Fuentes' car. This was done in spite of Fuentes' request that he be given the ticket and allowed to leave immediately without waiting while the drug dog screened his vehicle. It is Fuentes' position on appeal, as it was below, that Sergeant Ricketts did not have personal knowledge giving rise to a reasonable suspicion which would allow him to detain Fuentes past the time necessary to effectuate the purpose of the traffic stop. He complains that Sergeant Ricketts could not lawfully rely upon information from Detective Cook to justify prolonging the stop, but that Sergeant Ricketts could only extend the stop in reliance upon reasonable suspicion derived from the stop itself.

2. The Collective Knowledge Doctrine

¶13 In response, the State maintains that Sgt. Rickett's roadside detention was lawful based upon information known by Detective Cook and those assisting his investigation, under the Fellow Officer Rule or Collective Knowledge Doctrine. This legal rule, which imputes reasonable suspicion or probable cause possessed by one officer or group, to another officer who actually conducts a search or seizure, has a pedigree in this court nearly five decades old. "It is well settled that an agent may rely upon his fellow officers to supply the information which forms the basis of the arresting officer's reasonable grounds for believing that the law is being violated." Holt v. State, 1973 OK CR 38, ¶ 14, 506 P.2d 561, 566.

¶14 We examined it more recently and more in depth in State v. Iven, 2014 OK CR 8, ¶ 10, 335 P.3d 264, 268:

The rule for imputing knowledge from one officer to another is known variously as the "collective-knowledge" doctrine or the "fellow-officer" rule. United States v. Chavez, 534 F.3d 1338, 1345 (10th Cir.2008). Generally stated, the doctrine allows an officer to stop, arrest, or search a suspect in limited circumstances, even if the officer does not have firsthand knowledge of all of the facts that amount to reasonable suspicion or probable cause to justify the action. This principle derives from the recognition that law enforcement officers must be permitted to work collectively in the performance of their duties and act on directions and information given by one officer to another. United States v. Duval, 742 F.3d 246, 253 (6th Cir. 2014).

¶15 The collective knowledge doctrine has both vertical and horizontal application. The vertical application, implicated here, occurs "when an officer having probable cause or reasonable suspicion instructs another officer to act, even without communicating all of the information necessary to justify the action." United States v. Whitley, 680 F.3d 1227, 1234 (10th Cir. 2012).[3] The officer taking action does not need to personally be aware of all the facts justifying the detention because "officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information." United States v. Hensley, 469 U.S. 221, 231 (1985) (quoting United States v. Robinson, 536 F.2d 1298, 1299 (9th Cir. 1976)). Fuentes' claim that extending the duration of a traffic stop is permissible based only upon factors observed personally by the officer during the traffic stop is simply not supported by the law. "[W]e reject respondent's argument that reasonable cause for a stop and frisk can only be based on the officer's personal observation, rather than on information supplied by another person." Adams v. Williams, 407 U.S. 143, 147 (1972).

D. Conclusion

¶16 In the present case, Detective Cook had reasonable suspicion to believe that Fuentes was trafficking drugs based upon information from two known reliable confidential informants and his own investigation. Under the collective knowledge doctrine, Detective Cook's reasonable suspicion was vertically imputed to Sergeant Ricketts since Detective Cook directed Ricketts to make the traffic stop. Thus, based upon Detective Cook's reasonable suspicion that Fuentes was engaged in illegal activity, Sergeant Ricketts was justified in extending the lawful traffic stop for a reasonable length of time while a drug dog was dispatched and walked around the vehicle. There was no Fourth Amendment violation here and the trial court did not abuse its discretion in denying Fuentes' motion to suppress. Relief is not required.

DECISION

¶17 The Judgment and Sentence of the district court is AFFIRMED. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2021), the MANDATE is ORDERED issued upon delivery and filing of this decision.

AN APPEAL FROM THE DISTRICT COURT OF CANADIAN
COUNTY, THE HONORABLE JACK D. McCURDY, II,
DISTRICT JUDGE

 
 
 
 APPEARANCES AT TRIAL
 
 
 APPEARANCES ON APPEAL
 
 
 
 
  
 
 
  
 
 
 
 
 SAMMY DUNCAN
 J.P. HILL
 ATTORNEYS AT LAW
 1400 N.W. 16TH STREET
 OKLAHOMA CITY, OK 73106
 COUNSEL FOR DEFENDANT
 
 
 MARK P. HOOVER
 APPELLATE DEFENSE
 COUNSEL
 P.O. BOX 926
 NORMAN, OK 73070
 COUNSEL FOR APPELLANT
 
 
 
 
  
 
 
  
 
 
 
 
 AUSTIN T. MURREY
 ASSISTANT DISTRICT ATTORNEY
 CANADIAN COUNTY
 COURTHOUSE
 303 NORTH CHOCTAW
 EL RENO, OK 73036
 COUNSEL FOR STATE
 
 
 MIKE HUNTER
 ATTORNEY GENERAL
 OF OKLAHOMA
 KEELEY L. MILLER
 ASSISTANT ATTORNEY
 GENERAL
 313 N.E. 21ST STREET
 OKLAHOMA CITY, OK 73105
 COUNSEL FOR APPELLEE
 
 
 

 

OPINION BY: ROWLAND, V.P.J.
KUEHN, P.J.: Concur
LUMPKIN, J.: Concur
LEWIS, J.: Specially Concur
HUDSON, J.: Concur

FOOTNOTES

[1] Under 21 O.S.Supp.2015, § 13.1, Fuentes must serve 85% of his sentence of imprisonment before he is eligible for parole consideration.

[2] Sergeant Ricketts knew it was the car driven by Fuentes because he had access to the tracker through software on his iPad and was able to monitor its movements.

[3] Horizontal application refers to circumstances where multiple officers, working on the same investigation, each possess a portion of the total body of information which collectively forms the basis of probable cause or reasonable suspicion. Whitley, 680 F.3d at 1234 n.3.

 

 

LEWIS, JUDGE, SPECIALLY CONCURRING:

¶1 The opinion correctly concludes that an officer may obtain reasonable suspicion and even probable cause through his own investigation, as well as through knowledge gained by other officers involved in the investigation.

¶2 I write separately, however, to summarize and clarify the issues presented by Fuentes. Fuentes complains about his detention beyond the time of the traffic stop by Sgt. Ricketts. After Ricketts finished writing the citation, Fuentes signed and obtained a copy of the citation, and asked to be allowed to leave. Fuentes, however, was detained so that a K9 could complete a sniff around his vehicle.[1]

¶3 Ricketts testified that he requested the drug dog because Fuentes was extremely nervous, was agitated, was sweating profusely, and was constantly fidgeting and moving inside the vehicle. Ricketts also believed that Fuentes was under the influence of methamphetamine, but he did not arrest him based on the belief. Along with these personal observations, Ricketts testified his motivation to call for the K9 was also based on the tracking information, and that Fuentes and his vehicle were identified through the investigation by Investigator Cook. Cook relayed information that, based on his investigation, he believed Fuentes was transporting a large load of methamphetamine.

¶4 The trial court relied on the information relayed to Ricketts by Cook to uphold the extension of the legal traffic stop. The trial court did not mention Ricketts' observations in making his ruling.[2]

¶5 I find no fault in the trial court's finding that Cook's investigation, and the information derived therefrom, was reliable and provided sufficient legal cause for extending the traffic stop beyond permissible time constraints. I, therefore, concur that the trial court did not abuse its discretion in upholding the search and seizure in this case.

FOOTNOTES

[1] The drug detection K9 was already on the scene.

[2] During the first suppression hearing, the trial court stated that the nervousness Fuentes exhibited on the dash-cam video was not sufficient to rise to the level of reasonable suspicion. I agree that nervousness alone is not enough to justify the extension of a traffic stop.

 

 






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 2006 OK CR 50, 152 P.3d 235, SEABOLT v. STATE
Discussed at Length
 2012 OK CR 7, 274 P.3d 161, NELOMS v. STATE
Discussed
 2013 OK CR 7, 300 P.3d 1193, STATE v. BASS
Discussed
 2014 OK CR 8, 335 P.3d 264, STATE v. IVEN
Discussed
 2015 OK CR 2, 341 P.3d 91, STATE v. ALBA
Discussed
 2018 OK CR 2, 419 P.3d 249, STATE v. STRAWN
Discussed
 2018 OK CR 37, 433 P.3d 1264, MASON v. STATE
Discussed
 1973 OK CR 38, 506 P.2d 561, HOLT v. STATE
Discussed
Title 21. Crimes and Punishments
 Cite
Name
Level

 21 O.S. 13.1, Required Service of Minimum Percentage of Sentence - Offenses Specified
Cited
Title 63. Public Health and Safety
 Cite
Name
Level

 63 O.S. 2-415, Applicability of Act - Unlawful Acts - Violations - Penalties
Cited


 
 








 
 
 
 

 
 




 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA